**Thomas P. BLACKWELL, Jr.,**
**Plaintiff-Appellee,**

v.

**SUN ELECTRIC CORPORATION,**
**Defendant-Appellant.**

**No. 81–5517.**

United States Court of Appeals,
Sixth Circuit.

Argued June 23, 1982.

Decided Jan. 10, 1983.

Cecil W. Laws, Gillenwater & Laws, Samuel W. Rutherford, Bristol, Tenn., Jeffrey K. Ross (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellant.

David S. Haynes (argued), Bristol, Tenn., for plaintiff-appellee.

Before KEITH and KRUPANSKY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

KEITH, Circuit Judge.

This appeal raises the question of whether the district court's jury instructions setting forth the applicable law under the Age Discrimination in Employment Act. ("ADEA") 29 U.S.C. §§ 621 *et seq.*, (1967)[1] were misleading or improper. Because we find that the charge to the jury, taken as a whole, accurately stated the controlling law, we affirm the judgment of District Judge Robert Taylor.

I.

In 1975 Sun Electric Corporation ("Sun") hired plaintiff-appellee Thomas P. Blackwell ("Plaintiff") as a sales representative in its Memphis, Tennessee, regional office. His responsibilities included selling and instructing customers on the use of electronic diagnosis equipment used to test automotive vehicles.

During his three-year tenure at the Memphis office, Plaintiff was in the top 15% of Sun's national salesmen, and twice received a sales award for "being in the top $100,000 sales volume." In August 1978, Plaintiff voluntarily took a leave of absence from Sun. In January 1979 he returned and was transferred to the Knoxville, Tennessee regional office.

In November 1979 Mike Eberhardt became regional manager for Sun's Knoxville office. In February, 1980, he warned Plaintiff that he would have to increase his sales. Between March and July 1980 plaintiff did improve his monthly gross sales volume. But on July 3, 1980, Eberhardt discharged Plaintiff, allegedly for his failure to meet the minimum net sales volume for his sales territory. According to Eberhardt, Plaintiff's net sales were far below the $8,000 monthly net sales needed to offset Sun's expenses in the territory.[2]

However, Plaintiff maintained that Eberhardt fired him because of his age. He cited the fact that other older workers had also been fired, and that Eberhardt seemed to spend a lot of time socializing with the younger employees. He cited a comment made by Eberhardt to one of the other older employees, "Your get up and go has got up and gone." Finally, he noted that Eberhardt expanded the sales territory for the plaintiff's successor while refusing to expand the territory when the plaintiff asked him to do so.

On February 21, 1981, Plaintiff filed suit in the United States District Court for the Eastern District of Tennessee. He alleged

---

1. 29 U.S.C. § 623(a)(1) makes it unlawful to "fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; ..."

2. Sun facilitates the nationwide selling of its equipment by using regional offices. It further divides the regions into zones. Each zone has a sales quota which each of its sales representatives is expected to attain. A representative's performance appraisal and commission is based upon a net sales figure. This figure is obtained by subtracting the amount of repossessions and other returned equipment from the amount of gross sales for the applicable period.

that Sun had discharged him because he was sixty-four years old, in contravention of the ADEA. On June 11, 1981 the case was tried before a jury. The jury rendered a general verdict, finding Sun liable for age discrimination and awarding Plaintiff fifty-thousand dollars ($50,000) in damages. Sun appeals.

## II.

Sun argues that the district court erred by not instructing the jury on the essential elements of a prima facie case in an age discrimination suit. Specifically, Sun maintains that the jury should have been instructed that its proffered reason for Plaintiff's discharge was sufficient to dispel any inference of discrimination unless they found the reason to be a mere pretext. We disagree.

In the seminal case of *Laugesen v. Anaconda,* 510 F.2d 307, 312 (6th Cir.1975), we stated: "While it may not be unreasonable to assume that in a proper case the guidelines established in *McDonnell Douglas v. Green* [411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ][3] can be applied in age discrimination jury cases, we believe it would be inappropriate to simply borrow and apply them automatically." The *Laugesen* court concluded that the strict evidentiary approach used in racial discrimination cases should not be blindly applied in an age discrimination case. *See Laugesen,* 510 F.2d at 312–13 n. 4. The court reasoned that while racial discrimination is most often based upon a desire to disadvantage a particular racial minority, employment decisions involving age may reflect the result of the universal progression of aging. The ADEA was designed to protect the older worker from arbitrary classifications on the basis of age, not to restrict the employer's right to make bona fide business decisions. Thus, in order to avoid interfering with legitimate business decisions, we opted for a case-by-case approach.

In subsequent cases, we have continued to eschew a rigid application of the *McDonnell Douglas* formula. In fact, in *Sahadi v. Reynolds Chemical,* 636 F.2d 1116 (6th Cir. 1980), an employee was terminated during an economic cutback and a younger person was retained in a position the plaintiff was capable of performing and willing to relocate to perform. Nevertheless, the court held that the plaintiff had failed to establish a prima facie case of age discrimination. In *Ackerman v. Diamond Shamrock,* 670 F.2d 66 (6th Cir.1982), the court reaffirmed the case-by-case approach. Judge Phillips, speaking for the Court, noted:

> A mechanical application of the *McDonnell Douglas* guidelines might bar the suit of a worthy ADEA claimant. In other cases, an overly mechanical application could supply an ADEA plaintiff with a triable claim where none exists.

*Id.* at 70. *See also Locke v. Commercial Union Insurance,* 676 F.2d 205 (6th Cir. 1982).

The defendant relies upon opinions from several circuit courts which follow the *McDonnell Douglas* guidelines and order of proof in age discrimination cases. We interpret those opinions as allowing the use of the *McDonnell Douglas* guidelines, but not making them the exclusive criteria for establishing a prima facie case. Indeed, in several of those cases, the courts expressly disavowed any intent to preclude other methods of proving unlawful age discrimination. *See, e.g., Loeb v. Textron,* 600 F.2d 1003, 1018 (1st Cir.1979); *Stanojev v. Ebasco Services,* 643 F.2d 914, 920–22 (2d Cir. 1981); *Hedrick v. Hercules,* 658 F.2d 1088, 1093 (5th Cir.1981). To the extent the cases cited by the defendant permit the *McDonnell Douglas* guidelines to be used to prove age discrimination, they are in full accord with the case-by-case approach of this court. We hold that it was not error for the court to refuse to instruct the jury on the prima facie elements of a discrimination

---

**3.** The *McDonnell Douglas* guidelines require that the plaintiff show the following in order to establish a prima facie case: (1) that he is a member of the protected class, (2) that he ap- plied for a job and was rejected, (3) that he was qualified for the job, and (4) that after he was rejected, the employer continued to seek applicants for the particular job.

case as set forth in *McDonnell Douglas.*[4] Moreover, we hold that the record reflects that the plaintiff introduced enough evidence to present a prima facie case of age discrimination.

The ultimate issue in this age discrimination suit is whether age was a determining factor in the employer's decision to fire the plaintiff. *Ackerman,* 670 F.2d at 70. *Laugesen,* 510 F.2d at 317. The plaintiff can establish a prima facie case of age discrimination by using the *McDonnell Douglas* criteria. The plaintiff can also establish a prima facie case using statistical information, direct evidence of discrimination, and circumstantial evidence other than that which is used in the *McDonnell Douglas* criteria. *See Stanojev v. Ebasco Services,* 643 F.2d at 920–21. Once a prima facie case is established through either of these methods, the burden shifts to the employer to produce a legitimate non-discriminatory reason for his decision. The ultimate burden of proving discrimination also remains with the plaintiff. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The district court's charge adequately instructed the jury on the respective burdens and requisite elements of a prima facie case of age discrimination. Though the court did not adopt the language of *McDonnell Douglas* as modified for age discrimination cases, it simply and directly stated the issue for the jury. We agree with the First Circuit's reasoning in *Loeb v. Textron:*

> The court should not force a case into a *McDonnell Douglas* format if to do so will merely divert the jury from the real issues; rather it should use its best judgment as to the proper organization of the evidence and the charge. In cases of this type, the best jury instruction may simply be one that emphasizes that plaintiff must prove by a preponderance of the evidence that he was discharged because of his age—with adequate explanation of the meaning of the age statute, the determinative role age must have played, etc.

600 F.2d at 1018. The district court's instructions included all of the relevant factors and provided sufficient guidance to the jury from which it could make an informed decision on the controlling issue.[5]

██ We also disagree with defendant's assertion that the plaintiff failed to establish a prima facie case. Even if we were to strictly apply the *McDonnell Douglas* criteria, Plaintiff provided evidence that 1) he was a member of the protected class, 2) he was discharged, 3) he was qualified for the job, and 4) he was replaced by a younger

---

4. As modified to fit age discrimination cases, the *McDonnell Douglas* test for making out a prima facie case of discrimination requires that a plaintiff demonstrate that (1) he was a member of the protected class; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a younger person.

    *Ackerman v. Diamond Shamrock,* 670 F.2d 66, 69 (6th Cir.1982) (citing *Marshall v. Goodyear Tire and Rubber Co.,* 554 F.2d 730, 735 (5th Cir.1977) ).

5. The court stated the issue for the jury in the following manner:

    Plaintiff bases his lawsuit on the Age Discrimination in Employment Act as amended, 29 U.S.C. Section 623, et seq. That Act provides in pertinent part as follows: "It shall be unlawful for an employer to discharge any individual because of such individual's age." The prohibitions contained in the Act are limited to individuals who are at least 40 years of age but less than 70 years of age.

    Thus, the Act makes it unlawful for an employer to discharge an individual between the ages of 40 and 70 because of his age. Not every such discharge is unlawful under the Act, however. The Act further provides: It shall not be unlawful for an employer to take any action otherwise prohibited where such action is based on reasonable factors other than age. If the discharge of plaintiff was based on bona fide business or economic reasons in which age was not a factor, there could be no violation of the law, and the defendant's discharge of plaintiff would be lawful. And plaintiff would not be entitled to recover. The plaintiff in this case has the burden of showing by a preponderance of the evidence that the defendant discharged him because of his age. The defendant contends that it discharged him because of bona fide business or economic reasons unconnected with age.

worker outside the protected class.[6] We do not agree that the plaintiff failed to prove that he was qualified for the job. He had performed the job satisfactorily for several years. Moreover, if we were to hold that a plaintiff's prima facie case fails if his qualifications are challenged by the defendant, we would effectively preclude age discrimination suits of this kind. Then, a defendant would always be able to challenge the plaintiff's qualifications for the job, and the issue would be taken away from the jury. But it is the defendant's burden to produce enough evidence to convince the trier of fact that the plaintiff was fired because he was incapable of performing his job. The plaintiff in this case certainly presented enough evidence to raise an inference of age discrimination until such inference was dispelled by an explanation from the defendant.

Even if the plaintiff had not met the *McDonnell Douglas* criteria, we would still hold that he had presented a prima facie case. There was conflicting testimony as to why Eberhardt refused to expand the territory for the plaintiff, and yet expanded the territory for the younger salesman who replaced him. One of the witnesses testified that Eberhardt had stated to him that he could always find a reason for firing somebody. There was evidence that Eberhardt, the young supervisor, "buddied with" younger salesmen. There was also disputed testimony regarding the reasons for the discharge of several other older salesmen. Certainly the combination of these factors was sufficient to raise an inference of discrimination, and thus require the defendant to explain its actions.

### III.

■ The defendant further contends that the district court erred because it failed to instruct the jury that the ADEA was violated only if age was a determining factor in the defendant's decision to discharge Plaintiff. We disagree that the jury instructions on this issue constituted reversible error.

■ It is well settled that age must be a "determining factor" in an employment decision in order to impose liability upon the employer. In *Laugesen,* this Court articulated guidelines for instructing a jury in an ADEA case. The Court stated:

> However expressed, we believe it was essential for the jury to understand from the instructions that there could be more than one factor in the decision to discharge him, and that he was nevertheless entitled to recover if one such factor was his age and if in fact it made a difference in determining whether he was to be retained or discharged.

*Id.* at 317. *See also Ackerman* at 70 (". . . ultimate issue is whether age was a factor in a decision of an employer to terminate an ADEA claimant and whether the age of claimant made a difference in determining whether he was to be retained or discharged."); *Sahadi* at 1117 (". . . age would not have to be the sole reason, but only a contributing factor in connection with the discharge.").

■ In evaluating the adequacy of jury instructions, they must be taken as a whole. *Haislah v. Walton,* 676 F.2d 208, 212 (6th Cir.1982); *Laugesen,* 510 F.2d at 315; *Tyree v. New York Central R.R.,* 382 F.2d 524, 527 (6th Cir.), *cert. denied* 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659 (1967). Thus, the defendant cannot complain about the specific wording of the instructions if they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its determination. The district court's instructions in this case performed these functions.[7]

---

**6.** Several courts have held that an ADEA plaintiff need not prove that he or she was replaced by a younger employee in order to establish a prima facie case. *See, e.g., Loeb v. Textron,* 600 F.2d 1003, 1013 (1st Cir.1979); *Douglas v. Anderson,* 656 F.2d 528 (9th Cir.1981). They reason that such an employer might hire an older worker in order to thwart an age discrimination suit if this were a requirement. Since the plaintiff in this case was replaced by an employee outside the protected class, we need not consider this issue.

**7.** The court's instructions pertinent to this point stated:

We are fully aware that at certain points in the instructions the district court was less than precise when it tried to use language the jurors could understand. The better practice would have been to use the "determining factor" language rather than the "entered into" language used several times over the course of the trial.[8] Despite the imprecision of the district court's language, we find the instructions more than adequate when viewed in their entirety.

The instructions state that the plaintiff has the ultimate burden of proving discrimination. They also correctly inform the jury that though there may be more than one reason for the employer's decision, the jury must decide whether at least one of the reasons was the plaintiff's age. Moreover, they charge the jury that if there were bona fide business or economic reasons for the discharge, and age was not a factor, then the employer is not liable to the plaintiff. Thus all of the factors set forth in the guidelines in *Laugesen* are present.

The Second Circuit recently addressed a similar issue in an age discrimination case. In *Geller v. Markham,* 635 F.2d 1027 (2d Cir.1980), *cert. denied* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981), the court upheld a jury verdict for the plaintiff even though the district court refused to amend a special interrogatory which asked whether a scheme which was discriminatory on its face was "one reason" for the plaintiff's discharge. The defendant requested that the interrogatory be amended to read "one reason that made a difference." In upholding the refusal to amend, the circuit court opined that if the interrogatory had been the only guidance given to the jury, the defendants might have been entitled to a new trial since age can be one reason but not a determinative reason for discharge. But once the interrogatory was viewed in the context of other instructions, its meaning became clear.

Similarly, the district court's instructions in this case adequately apprised the jury of its task. The court's reference to "a factor", when viewed beside the court's other instructions, obviously refers to "a factor in the termination of the plaintiff." The court instructs the jury several times that it must find that the plaintiff would not have been discharged except for his age.

■ Sun contends that the court's response to counsel's exception to the jury instructions betrays a misunderstanding of the law.[9] We disagree. The court's re-

8. In this connection, the Court charges you that plaintiff need not show that age was the sole or exclusive factor in the defendant's discharge of plaintiff. There could be more than one factor in the decision to discharge plaintiff. The plaintiff is nevertheless entitled to recover if one such factor was his age, and if that factor made a difference in determining whether the plaintiff was discharged. The ultimate question is not whether the defendant's decision to discharge plaintiff reflected an accurate or wise judgment of the plaintiff's abilities. The question is whether the decision was unlawfully motivated by the factor of his age.

If you find that the defendant's discharge of plaintiff was for the reasons asserted by it, then, you must find in favor of the defendant. On the other hand, if you find by a preponderance of the evidence that plaintiff's age made a difference in defendant's decision to discharge plaintiff, then the defendant would be liable to the plaintiff, and you must proceed to determine the damages due him. Now, in this case, as previously indicated, the burden of proof is upon the plaintiff. Before plaintiff can recover, plaintiff must show that age entered into the determination. If age entered into the termination of his employment, then there would be liability. On the other hand, if age did not enter into the decision of the defendant to terminate his employment, there could be no liability.

8. Our discussion of the adequacy of the jury is equally applicable to other comments made by the court to the jury during the course of the trial.

9. MR. LAWS [Defendant's Counsel]: I believe his Honor's charge on the age as being the—a reason if it was one of the considerations, and I believe the law would state that that should be the reason for the discharge, and that would be my exception to the charge. I would ask that the Court charge them but for the age consideration he would not have been discharged.

THE COURT: Did you understand that?

MR. HAYNES [Plaintiff's Counsel]: I don't understand that being the law.

THE COURT: I don't understand what he means by it.

MR. LAWS: You are saying—your charge, as I understood it to the jury, if they should find that—

sponse reflected no more than a misunderstanding of counsel's request. We note that the instruction, even as characterized by defendant's counsel, is accurate. As stated earlier, it is not reversible error if the court refuses to use the exact language counsel requests.

## IV.

### A.

The district court charged the jury that the defendant was guilty of willful discrimination if it fired the plaintiff because of his age and knew or had reason to know that its actions were governed by the Act.[10] The defendant challenges this instruction as unsupported by the Act and opinions from other courts of appeals. We note that this is an issue of first impression for this court.

The ADEA provides that liquidated damages are payable only in cases of willful violations of the Act. 29 U.S.C. § 626(b).[11] The Act itself provides no definition or guidance as to how the term "willful" is to be defined. The courts of appeals have adopted various approaches for distinguishing cases in which violations of the Act will support liquidated damages from those that will not.

In *Loeb v. Textron*, 600 F.2d at 1020 n. 27, the court appeared to adopt the position that "an act is done willfully if done volun-

tarily and intentionally, and with the specific intent to do something the law forbids." The Third Circuit rejected the specific intent standard of *Loeb* in *Wehr v. Burroughs Corp.*, 619 F.2d 276, 283 (3d Cir. 1980). The *Wehr* court concluded that Congress did not intend to restrict liquidated damages to those cases in which the defendant consciously violated the Act. It held:

> It is sufficient to prove that the company discharged the employee because of age and that the discharge was voluntary and not accidental, mistaken, or inadvertent. In our view, it would also be sufficient to prove that the discharge was precipitated in reckless disregard of consequences.

*Id. Cf. Goodman v. Heublein, Inc.*, 645 F.2d 127 (2d Cir.1981).

The Ninth Circuit has indicated agreement with the Third Circuit's holding that a finding of recklessness will support liquidated damages. In *Kelly v. American Standard, Inc.*, 640 F.2d 974 (9th Cir.1981), the court held that the ADEA does not require a specific intent to violate the Act or require that an employer have "knowledge of implications under the Act." It reasoned that to allow an employer to avoid liability because he lacked an intimate familiarity with the Act could frustrate the congressional purpose. It would have "the anomalous effect of encouraging employers to know as little as possible about the ADEA so they would not be liable for liquidated damages." *Id.* at 980.

---

THE COURT: That age—

MR. LAWS: —age was a consideration—

THE COURT: That's right, and that is the law.

MR. LAWS: And I am objecting to the charge.

THE COURT: All right, sir. The objection is overruled.

**10.** The entire instruction on the willfulness issue charged:

> In that connection the Court charges you that an employer acts willfully if he knows or has reason to know that his acts are governed by the Act. That is this Act that has been referred to in this Charge, which is familiarly known in common language as the Age Discrimination Act.
> Neither a good faith belief in the lawfulness of his actions, nor ignorance of their illegality shields the employer if he violates the Act.

The test is, did the employer know the Act was in the picture?

**11.** 29 U.S.C. § 626(b) states in relevant part: Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: Provided, That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

In *Syvock v. Milwaukee Boiler Manufacturing,* 665 F.2d 149 (7th Cir.1981), the Seventh Circuit held that the plaintiff must prove that the defendant's actions were knowing and voluntary, and that he knew or reasonably should have known that those actions were violative of the ADEA. *Id.* at 156. The *Syvock* court explained that this standard implied: "(1) that the employer knew or reasonably should have known what the requirements of the ADEA are; and (2) that the employer knew or reasonably should have known that his actions towards the plaintiff were inconsistent with those requirements." *Id.*

It appears that Congress, in adopting the liquidated damages provision, sought to distinguish cases in which there is intentional discrimination from those where the employer's discrimination is not intentional. This interpretation is buttressed by the fact that Congress evidently intended that a plaintiff be able to prove age discrimination without proving intent to discriminate. Thus, the plaintiff must meet a higher burden of proof in order to receive liquidated damages. *See Kelly,* 640 F.2d at 980; *Syvock v. Milwaukee Boiler Manufacturing,* 665 F.2d at 154.

However, every showing of intentional discrimination does not entitle the plaintiff to liquidated damages. The fact that Congress did not incorporate the liquidated damages provisions of the Fair Labor Standards Act (FLSA) into the ADEA evinces a congressional intent to make a meaningful distinction between willful violations of the Act and violations that are not willful. *See Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978). *See also Goodman v. Heublein,* 645 F.2d at 129 n. 2.

We hold that in order to show willfulness, an ADEA plaintiff must show that the employer's actions were voluntary and intentional. The employer is not necessarily shielded from liability because he is unaware of the "implications of his actions under the Act." Alternatively, the plaintiff may receive liquidated damages if he shows that the employer was reckless in not knowing that his actions were governed by the ADEA or that the employer acted in reckless disregard of whether his actions were covered by the ADEA.[12]

We also agree with the Third Circuit's holding in *Wehr* that it is not necessary for the plaintiff to show that the employer acted with a specific intent to violate the Act. *Wehr,* 619 F.2d at 279 n. 5. *See also Kelly* at 980. Moreover, though a finding of good faith would preclude a finding of willfulness, it is not necessary that the trier of fact make express findings of fact on the good faith issue. *Loeb,* 600 F.2d at 1020; *Wehr,* 619 F.2d at 279 n. 5. Rather, in a jury trial the court's instructions to the jury should focus on whether the employer deliberately, intentionally and knowingly discharged the employee because of his age.

### B.

We now consider the jury instructions on the willfulness issue in light of the foregoing principles. Viewing the instructions as a whole, *see supra,* we hold that the district court adequately formulated the relevant considerations for the jury. Though our Court had not yet spoken on the issue of willfulness, we think the district court's instructions accurately focused the question for the jury: whether the employer had acted deliberately, intentionally and knowingly in firing the plaintiff because of his age.

In the context of this case, we read the court's "in the picture" language to describe a threshold situation in which an employer discriminates against an employee because

---

12. We concur with the reasoning of the Seventh Circuit in *Syvock:*

> The showing must clearly be greater than that necessary for the initial finding of ADEA liability. The showing must be sufficient to indicate that the defendant's discrimination was not unconscious. In a disparate treatment case, a finding of willfulness will generally require some direct evidence of discriminatory intent toward the plaintiff or a showing that, at the time of the alleged discriminatory action, the employer was motivated to discriminate or engaged in a pattern of discriminating against older employees.
> 665 F.2d 149, 156 n. 10 (7th Cir.1981).

of age without knowledge that any specific provision of the ADEA is applicable. Furthermore, we think that the court's instructions do not preclude a consideration of the defendant's good faith. Rather, they correctly state that the good faith belief of the employer in the legality of his actions does not necessarily shield him from liability for liquidated damages. The court's imprecision in expressing some of these points does not fatally undermine their essential accuracy. Hence, we find no reversible error.

### C.

Finally, Sun challenges the jury's damage award of $50,000. Sun argues that there is no showing on the record to support such a damage assessment. We agree.

Plaintiff earned approximately $8,600 in the six months preceding his discharge. After his discharge, the territory was expanded and Sun introduced a greater discount policy in order to attract customers. Plaintiff testified that he could have earned two to three times as much in the expanded territory. This testimony is too speculative to support a damage award. However, there is nothing in the record which indicates that the plaintiff would have been compensated at a lower rate than in the preceding six months. Eleven months passed between the time of the plaintiff's discharge and the date of trial. Thus, Plaintiff is entitled to approximately $15,770 as lost wages.

The record supports a finding of willfulness, and the post-trial hearing indicated that the district court and the attorneys for both parties thought that the jury had made such a finding.[13] Since we have upheld the district court's instructions on the willfulness issue, we think the plaintiff is entitled to an amount equal to his lost wages as liquidated damages.[14]

The ADEA allows the court to grant equitable remedies to persons aggrieved by a violation of its provisions. Plaintiff contends that under § 626(b) he is entitled to $6,000 in pension benefits which have been posted to his pension plan and $715 in health benefits which he would have received in the eleven months after his discharge. We agree that Plaintiff is entitled to the health benefits, but he is not entitled to any pension benefits.

At the time of Plaintiff's discharge, he had no vested rights in the pension benefits. No such rights would have vested until he had worked for the company for five more years. Moreover, all of the funds in the plan were invested by Sun. Plaintiff would have received no pension benefits or vested rights in pension benefits in the eleven months after his discharge. It would be too speculative to grant benefits that would not vest until such a distant time in the future.[15]

However, Plaintiff is entitled to the health benefits he would have received in the eleven months between his discharge and the trial. He has shown that he would

13. The district court allowed the jury to return a general verdict. This, in and of itself, is not a ground for reversal. It would be a preferable practice, however, to submit the willfulness issue to the jury by special interrogatory. This would provide a clearer basis for examining the jury's factual findings and facilitate review on appeal.

14. The enforcement provision of the ADEA, 29 U.S.C. § 626(b) specifically adopts most of the remedies enumerated in Sections 16 and 17 of the Fair Labor Standards Act, (FLSA), 29 U.S.C. §§ 216 and 217. Section 16(b) of the FLSA provides in relevant part:

> Any employer who violates ... shall be liable to the employee or employees affected in the amount of their unpaid minimum wages,

> or their overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

Though liquidated damages are not automatic in age discrimination cases, the measure of liquidated damages is adopted from the FLSA provisions.

15. It should be noted that Plaintiff never requested reinstatement to his former position. If he had requested and the district court had granted reinstatement, this court would be presented with a different question. Perhaps, under those circumstances, an equitable solution would be to provide that Sun post to the plaintiff's pension plan the amount that would have been contributed in the period between the unlawful discharge and reinstatement.

have received $715 in health insurance if Sun had not illegally discharged him. He also is entitled to recover $400 for the equipment that he returned to the company when he left. He presented evidence that the company almost always reimbursed an employee for such equipment when the employee returned it when leaving the company.

There is no other proof of damages on the record. Thus we see no basis for the jury's award of $50,000. Rather, Plaintiff is entitled to his lost wages for the eleven months between his discharge and trial, an equal amount as liquidated damages, health benefits for eleven months, and reimbursement for equipment returned to Sun when he left. Therefore, the damage award should be reduced to $32,655.

Accordingly, we remand this case to the district court for entry of judgment consistent with this opinion.

KRUPANSKY, Circuit Judge, dissenting.

This is an appeal from a jury verdict of $50,000 returned in favor of appellant Thomas Blackwell (Blackwell) after a six-hour trial on a charge that he was discharged from his employment by Sun Electric Corp. (Sun) in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. Because the jury instructions below were misleading and confusing on the basic issues defining an actionable ADEA claim, and the term "willful", as applied in an ADEA claim to support liquidated damages, I must respectfully dissent.

I

The operative facts of the underlying suit are not complex. In 1975, Blackwell was hired by Sun, an automotive electronic parts supplier, as a sales representative in Memphis. Blackwell was 59 years old and his insurance business had recently failed. His job required that he travel in a sales "zone" contacting potential customers and holding "schools" to teach garage owners and service mechanics how to use Sun equipment. Moreover, each zone had a minimum net sales quota.

In 1979, Blackwell and Sun agreed to a transfer in which Blackwell relocated in a zone in the Knoxville region which was more geographically compact but incorporated a greater number of potential customers. The regional manager in Knoxville, Blackwell's immediate superior, set a quota of $8,000 per month as the "break even" figure for each salesman in the zone. Despite conflicting testimony as to the interpretation placed upon this language by Sun and Blackwell, *i.e.* gross or net sales, it is clearly established that Blackwell was advised in writing in February, 1980 to "correct [his] low sales volume". It is further established that at the time Blackwell was terminated on July 3, 1980 at age 64 his sales had increased but remained below the quota when computed on a net basis.

There was additional evidence presented to the jury that two other salesmen over age 50 had been discharged at approximately the same time as Blackwell and replaced by younger men. The company presented testimony in rebuttal that the other terminated salesmen had violated a policy against switching new and used equipment or had alcohol problems.

The evidence which allegedly supported the $50,000 damage award, which will be more thoroughly related *infra,* essentially consisted of a projection of Blackwell's prior average monthly earnings to the date of trial ($10,083); the plaintiff's unsupported conjecture that he could have fully tripled or doubled this figure in the reconstructed sales area assigned to his replacement ($26,-166); and the wholly fantastic assertion by plaintiff's counsel that the jury, without receiving an instruction, thereupon doubled the damage award in conformity with the statute. The only foundation for an award of $50,000 is that Blackwell demanded $50,-000 in his complaint and that demand was repeated to the jury by the court in the closing portion of the charge.

II.

The most thoroughly contested issue on appeal is that which addresses the elements

of an actionable violation of the ADEA. The issue may be suitably bifurcated into separate, though related, areas of inquiry concerning the components of a *prima facie* case, and the causal weight to be attributed to an employer's consideration of age where other, non-discriminatory, factors are also present ("mixed motive analysis"). These subjects are here discussed sequentially.

### A.

While nine other circuits have concluded that the standards for a *prima facie* Title VII action promulgated by the Supreme Court in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) are applicable to ADEA actions, *see Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir.1979); *Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914 (2d Cir.1981); *Smithers v. Bailar,* 629 F.2d 892 (3rd Cir.1980); *Smith v. University of North Carolina,* 632 F.2d 316 (4th Cir.1980); *Marshall v. Sun Oil Co.,* 605 F.2d 1331 (5th Cir.1979); *Kephart v. Institute of Gas Technology,* 630 F.2d 1217 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981); *Cova v. Coca-Cola Bottling Co.,* 574 F.2d 958 (8th Cir.1978); *Sutton v. Atlantic Richfield Co.,* 646 F.2d 407 (9th Cir.1981); *Kentroti v. Frontier Airlines, Inc.,* 585 F.2d 967 (10th Cir.1978), this Circuit has declined to "borrow and apply * * * automatically," the *prima facie* case guidelines of *McDonnell Douglas* to ADEA suits. *Laugesen v. Anaconda Co.,* 510 F.2d 307, 312 (6th Cir.1975). Instead, this Court has stated a preference for asserting the sufficiency of an ADEA plaintiff's claim "on a case-by-case basis, rather than adopting formalistic approaches * * *." *Sahadi v. Reynolds Chemical,* 636 F.2d 1116, 1118 n. 3 (6th Cir.1980) (*per curiam*). As noted by the Court in *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 70 (6th Cir.1982):

> A mechanical application of the *McDonnell Douglas* guidelines might bar the suit of a worthy ADEA claimant. In other cases, an overly mechanical application could supply an ADEA plaintiff with a triable claim where none exists.

The result of this approach has given rise to conclusions such as that offered recently by Judge Jones in *Locke v. Commercial Union Ins. Co.,* 676 F.2d 205 (6th Cir.1982) (*per curiam*) Jones, dissenting:

> This Circuit has not articulated what a plaintiff must prove to establish a prima facie case that his discharge violated the ADEA.

> What can be stated with certainty is that a *prima facie* ADEA claim must contain more than the plaintiff's mere conclusion that he was terminated because of his age. The *Locke, supra* majority formulated the principle as follows:

>> The plaintiff did nothing more than state his conclusion that he was terminated because of his age. To permit this single statement to constitute a prima facie case would place on employers a burden which Congress never intended. There is no automatic presumption that every termination of an employee between the ages of 40 and 70 results in a violation of the Age Discrimination in Employment Act. Yet to permit a plaintiff to shift the burden to the defendant of justifying a termination on such a conclusory statement would have this effect. See *Sahadi v. Reynolds Chemical,* 636 F.2d 1116, 1118 (6th Cir.1980); *Ackerman v. Diamond Shamrock,* 670 F.2d 66 (6th Cir.1982).

676 F.2d at 206. Further, this Court has concluded that a *prima facie* case is not established when a plaintiff simply proves that he is a member of the 40 to 70 age group protected by the ADEA, that he was discharged, and that he was replaced by a younger person. Such a fact situation ignores the reality that "discharged workers will more often than not be replaced by those younger than they". *Sahadi v. Reynolds Chemical, supra* at 1118.

In fact, a careful reading of Sixth Circuit authority discloses a basic framework for ADEA analysis. The *Laugesen* court propounded this rubric:

> [The] burden [is] initially upon the plaintiff to prove his claim that he was discharged *because of* his age. Absent an

admission by the defendant or a state of facts so clear that no reasonable person would disagree, the issue remain[s] one for the jury and *the burden of proof remain[s] with the plaintiff.*

* * * This is not a case in which the defense admits the discrimination but seeks to justify it as a bona fide occupational disqualification necessary to the normal operation of business.

510 F.2d at 313 (emphasis added).

Stated differently, the burden of proof remains with the plaintiff until discrimination "because of" age is shown or conceded, and only then must the employer prove that its action was otherwise necessary as a bona fide occupational qualification apart from age. *See also Tuohy v. Ford Motor Co.,* 675 F.2d 842 (6th Cir., 1982). Indeed, it is settled that the ADEA "was not intended for judicial review of business decisions." *Kephart v. Institute of Gas Technology, supra,* quoted in *Ackerman, supra* at 70. Accordingly, at a minimum, a *prima facie* ADEA case in this Circuit requires a plaintiff to prove that the action complained of was taken "because of" his age, and an employer is under no burden to prove the soundness of its decision *ab initio.*

#### B.

It is at this juncture that the second prong of the discussion on the elements of an actionable ADEA claim becomes relevant. Accordingly, it is essential that a jury be instructed as to the manner by which a plaintiff must meet the burden of proving that an action was taken "because of" a plaintiff's age. Once again, the genesis of this Circuit's analysis is *Laugesen, supra:*

However expressed, we believe that it was essential for the jury to understand from the instructions that there could be more than one factor in the decision to discharge [the plaintiff] and that he was nevertheless *entitled to recover if one such factor was his age and if in fact it made a difference* in determining whether he was to be retained or discharged. * * * It is because the instructions did

not convey this necessary concept of the law to the jury that we are compelled to reverse and remand for a new trial.

510 F.2d at 317 (emphasis added). *Accord, Ackerman, supra* at 70.

This standard clearly involves two steps: first, the plaintiff must prove that one factor in the decision to terminate employment actually was the claimant's age; *and* two, that "the age of the claimant made a difference in determining whether he was to be retained or discharged." *Ackerman,* 670 F.2d at 70.

The Second Circuit, which approved the "factor that made a difference" test of *Laugesen,* in *Geller v. Markham,* 635 F.2d 1027, 1035 (2d Cir.1980), has recently noted that it could not approve "an instruction that stated only that the jury must find age to be a 'determining factor' without clarifying that term." *Bentley v. Stromberg-Carlson Corp.,* 638 F.2d 9, 12 (2d Cir.1981). The *Bentley* court suggested that the jury be told "a plaintiff must prove that age was 'a determining factor' in his discharge in the sense that 'but for' his employer's motive to discriminate against him, he would not have been discharged." *Id. quoting Loeb v. Textron, Inc.,* 600 F.2d 1003, 1019 (1st Cir.1979).

Wherefore, the case authority of this Circuit seems to mandate that a trial judge instruct an ADEA jury on at least three essential points: first, that the plaintiff has the burden of proving that regardless of the soundness of the employer's stated reasons for discharge, the actual reason was the claimant's age; second, that the burden is met when the plaintiff establishes that one factor in the decision was the claimant's age, and further that the age factor "made a difference", and third, that the age of the claimant made a difference if, when taken together with even compelling non-discriminatory reasons, the plaintiff would not have been discharged "but for" his age.

#### III

In the case at bar, the trial court's instructions appear to reflect the confusion engendered by this Circuit's "case-by-case"

approach to the ADEA. Portions of the brief (10-page) charge track *Laugesen* closely; immediately contiguous passages appear contradictory. At the commencement of *voir dire,* the district judge stated the case thusly:

THE COURT: This suit is by Thomas P. Blackwell, Jr., who is the plaintiff, and the Sun Electric Corporation, who is the defendant.

Mr. Blackwell says that his employer, Sun Electric Corporation, terminated his services because of his age.

Now, the defendant denies that.

*If age entered into the termination, then, plaintiff would be entitled to recover.* But, if the defendant terminated his services because of his—for business reasons or for other legitimate reasons, the defendant would not be liable. (Emphasis added).

At the conclusion of the case, the jury was formally charged, in relevant part, as follows:

The plaintiff in this case has the burden of showing by a preponderance of the evidence that the defendant discharged him because of his age. The defendant contends that it discharged him because of bona fide business or economic reasons unconnected with age.

In this connection, the Court charges you that plaintiff need not show that age was the sole or exclusive factor in the defendant's discharge of plaintiff. There could be more than one factor in the decision to discharge plaintiff. The plaintiff is nevertheless entitled to recover if one such factor was his age, and if that factor made a difference in determining whether the plaintiff was discharged. The ultimate question is not whether the defendant's decision to discharge plaintiff reflected an accurate or wise judgment of the plaintiff's abilities. The question is whether the decision was unlawfully motivated by the factor of his age.

If you find that the defendant's discharge of plaintiff was for the reasons asserted by it, then, you must find in favor of the defendant.

On the other hand, if you find by a preponderance of the evidence that plaintiff's age made a difference in defendant's decision to discharge plaintiff, then the defendant would be liable to the plaintiff, and you must proceed to determine the damages due him.

Now, in this case, as previously indicated, the burden of proof is upon the plaintiff. *Before the plaintiff can recover, plaintiff must show that age entered into the determination. If age entered into the termination of his employment, then, there would be liability. On the other hand, if age did not enter into the decision of the defendant to terminate his employment, there could be no liability.*

As previously noted, Sun immediately objected to the district court's frequent instruction that ADEA liability may be premised simply upon a finding that Blackwell's age somehow "entered into" Sun's decision. The employer requested that the jury be instructed that age must do more than "enter into" the decision; it must be the factor that, "but for" its presence, the discharge would not have occurred. The trial judge professed not to understand the meaning of Sun's proposed language and told counsel that age need only be "*a consideration*". (Emphasis added).

Recognizing that an appellate court is required to "judge the charge as a whole and to affirm the jury verdict if, taken as a whole, [the charge] fairly presents the law as it applies to the case at hand." *Haislah v. Walton, et al.,* 676 F.2d 208 (6th Cir. 1982), the charge presently on review confuses and misstates the law as to the principal issue of the case.

Specifically, the jury was repeatedly told that Blackwell could recover if age "entered into" Sun's decision; a test which is obviously not extracted from the language of the controlling authorities. Standing alone, as it does at the commencement of *voir dire* and at the conclusion of the relevant section of the charge, the trial court's formulation of the law leaves the clear impression that it is sufficient for liability to attach if age

was one otherwise insignificant factor without further requiring, pursuant to *Laugesen,* that the age factor be found to have "made a difference" in the decision of termination. The casual approach of the trial court could result in finding ADEA violations any time an employer considering a potential discharge simply became aware of the employee's age, for then age would have surely "entered into" the decision process.

Accordingly, the district court's jury charge should be deemed insufficient and improper as a matter of law, and the case be retried.

### IV

The second issue joined on appeal is the propriety of the trial court's charge concerning "willful" violations of the ADEA, for which the Act provides that liquidated damages, in addition to back pay and benefits, may be awarded. 29 U.S.C. § 626(b); *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). The district court, as heretofore noted, instructed the jury on the meaning of the word "willful" in pertinent part as follows:

[T]he Court charges you that an employer acts willfully if he knows or has reason to know that his acts are governed by the Act. * * *

Neither a good faith belief in the lawfulness of his actions, nor ignorance of their illegality, shields the employer if he violates the Act. The test is, *did the employer know the Act was in the picture?* (Emphasis added).

This Circuit has not promulgated a definition of "willfulness" specifically applicable to the ADEA. The limited case authority on point is divergent. One approach has been to define "willful" as requiring a specific intent to violate the Act. Such an approach is clearly developed by the First Circuit in *Loeb, supra.*

"An act is done 'wilfully' if done voluntarily and intentionally, and with the specific intent to do something the law forbids: that is to say, with bad purpose either to disobey or to disregard the law."

E. Devitt & C. Blackmar. *Federal Jury Practice and Instructions* § 14.06 at 384 (3d ed. 1977).

600 F.2d at 1020, n. 27. *See also Coates v. National Cash Register Co.,* 433 F.Supp. 655 (D.W.Va.1977); *Hodgson v. Hyatt,* 318 F.Supp. 390 (N.D.Fla.1970).

A majority of circuits considering the issue have concurred with *Loeb* insofar as it requires that the employer's act be intentional and knowing. *Syvock v. Milwaukee Boiler Manufacturing Co.,* 665 F.2d 149 (7th Cir.1981); *Goodman v. Heublein, Inc.,* 645 F.2d 127 (2d Cir.1981); *Kelly v. American Standard, Inc.,* 640 F.2d 974 (9th Cir.1981); *Wehr v. Burroughs Corp.,* 619 F.2d 276 (3d Cir.1980). However, the Second and Third Circuits have added that willfulness could be established by merely "reckless" conduct. 645 F.2d at 131; 619 F.2d at 283. Further, the Ninth Circuit has concluded that both the "specific intent" *and* "reckless" additions to the basic knowing and intentional standard are improper. 640 F.2d at 980.

The Seventh Circuit in *Syvock, supra,* appears to have harmonized this group of cases and synthesized the following test as the product of this line of authority:

The standard for willfulness therefore should focus on the defendant's state of mind at the time the allegedly discriminatory acts occurred. It must distinguish those situations in which an employer consciously discriminates against an employee because of age from those in which the discrimination is unconscious. This distinction is just as necessary in disparate treatment cases as it is when the plaintiff sues on a discriminatory impact theory. We think that a finding of willfulness should lie only if there is some showing as to the defendant's knowledge of the illegality of his actions. We hold that, in order to prove willfulness under 29 U.S.C. § 626(b) (1976), a plaintiff must show the defendant's actions were knowing and voluntary and that he knew or reasonably should have known that those actions violated the ADEA.

655 F.2d at 155–156.

In this regard, the *Syvock* test, which emphasizes the defendant's "consciousness

of the illegality of his action", and *Loeb,* which actually requires "specific intent", are not in conflict. Indeed, it appears obvious that one who voluntarily commits an act while conscious of its illegality has "acted with the specific intent to do something that the law forbids". Under either *Syvock* or *Loeb,* the purpose of defining willfulness for the jury is to illuminate Congress' clear intent to "distinguish those situations in which an employer consciously discriminates against an employee because of age from those in which the discrimination is unconscious." *Syvock, supra* at 155. Plainly, the charge on review requires the jury to disregard evidence of "good faith" or "ignorance" which, under appropriate circumstances, may well result in a finding that, while a violation has occurred, it was not willful and accordingly could not support the added penalty of liquidated damages. The instruction in the matter at bar requires the jury to disregard the distinction between a good faith conclusion that the Act is inapplicable and a specific intent to act in disregard of the law.

Moreover, as is frequently the case throughout these proceedings, the trial judge has allowed himself to employ colloquial phrases to define the fundamental issues of the law. Subjecting the defendant to excess damages permitted only in instances of a specific finding of "willful" discrimination, upon the charge that the jury should determine if "the employer [knew] the Act was *in the picture*", is at best vague and of little real value to the factfinder, and at worst destructive of Congress' specific choice of a legal "term of art" with certain precise and well-understood consequences.

For all the above-stated reasons, the instruction below defining the term "willful" violations is fatally flawed and cannot support a verdict. This Circuit should further clearly formulate the definition of "willful" conduct applicable to the ADEA as that delineated by the Seventh Circuit in *Syvock.*

## V

Sun further contests the award of $50,000 in damages to Blackwell as being in excess of that permitted under the ADEA.

Under the ADEA, a successful litigant may be awarded back pay and benefits from the date of discharge to the date of trial, reinstatement, attorney fees and costs. Where a willful violation is found, an ADEA claimant may also receive liquidated damages in the amount "equal to the pecuniary loss [to] compensate the aggrieved party for non-pecuniary losses". U.S.Code Cong. and Admin.News (1978) p. 535. As was noted in the landmark ADEA case of *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834, 340–41 (3rd Cir.1977), cert. denied, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978):

Congress saw fit to restrict the penalty provisions of the Act to doubling the amount of lost earnings. To allow psychic distress awards in addition would in very real sense thwart the limitation Congress thought advisable to impose.

    \*    \*    \*    \*    \*    \*

The Act provides for determination of the amount of damages by an objective test—the amount of lost earnings. While the exact computation may be the subject of disagreement, that type of dispute is familiar to administrative proceedings and generally not difficult to resolve. *Accord: Naton v. Bank of California,* 649 F.2d 691 (9th Cir.1981); *Walker v. Pettit Construction Co.,* 605 F.2d 128 (4th Cir. 1979); *Vasquez v. Eastern Air Lines, Inc.,* 579 F.2d 107 (1st Cir.1978); *Dean v. American Security Insurance Co.,* 559 F.2d 1036 (5th Cir.1977), cert. denied, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978).

In the case at bar, Blackwell's complaint requested "$50,000 compensatory damages, treble and attorney's fees". Plaintiff did not pray for reinstatement. The $50,000 figure was read to the jury at the close of the charge; the jury found damages of that amount; which were thereupon awarded. By its motion for a new trial, Sun argued that no legal or evidentiary foundation was laid for such an award.

The record of the hearing on the question of damages reveals clearly impermissible "bootstrapping" by the plaintiff and apparent unfamiliarity by the judge with the basic law that liquidated damages are to be calculated as an amount equal to the amount of actual lost earnings, thus having the effect of "doubling the amount of lost earnings". *Rogers v. Exxon Research & Engineering Corp., supra.* In relevant part, the record reads as follows:

PLAINTIFF'S ATTORNEY HAYNES: Now, there is substantial evidence that my client did earn for six months next preceding the firing at least enough so that if you projected it for the nine months just before leading up to the date of trial it would have been a total of $10,083.00.

There was substantial evidence from men who knew the territory. And you will recall that the company expanded the territory for the young employee that they put in my man's place.

And there was evidence he could have tripled and at least doubled his commissions had they expanded that territory for my client.

Now, if, in fact, you project his 11 months loss of commissions that he actually earned projected for the 11 months, and if you believe that he could have doubled those, then, that gets him well up to twenty-six-thousand—$26,166.00.

Now, he lost his pension rights of $6,000.00. There is substantial evidence in the record that he lost that. That gets him to $26,166.00. And therefore, either in lieu of reinstating him or by reason of the willfulness, that actual loss is doubled, that is $52,320.00. And it becomes apparent I didn't sue for enough.

*THE COURT: Where did you get the double part?*

MR. HAYNES: Where there is a finding of willfulness there can, under the case law to compensate as liquidated damages the pecuniary loss can be doubled.

*THE COURT: Who said that except Haynes?*

MR. HAYNES: Oh, Your Honor, the cases construing this Age Discrimination Law have said that. And in certain instances additional equal amount in liquidated damages. That is the same as doubling.

(Emphasis added).

Essentially in this post-trial rationalization, plaintiff attempted to (1) compute the average monthly income of Blackwell for the six months prior to his termination and arrive at a "lost earnings" figure for the year between termination and trial of $10,-083; (2) calculate such actual lost earnings and then *double* that amount on plaintiff's mere conjecture at trial that he could have so increased his volume in the new sales territory covered by his replacement; (3) thereafter increase the award by adding $6,000 in *unvested* pension funds and (4) conclude that the jury, without ever being so instructed, thereupon doubled that artfully accumulated figure to arrive at $50,-000.

This Court has long recognized that the purpose of a back pay award in employment matters is "to restore the employee to the status quo he would have enjoyed if the discriminatory discharge had not taken place". *NLRB v. McCann Steel Co.,* 570 F.2d 652, 656 (6th Cir.1978). Back pay must be limited to actual damages and proved with reasonable certainty. *EEOC v. Detroit Edison Co.,* 515 F.2d 301, 314–316 (6th Cir.1975). Although the factfinder has the discretion to ascertain damages in cases where certain elements of damages are not susceptible of precise calculation, such discretion must be exercised "reasonably and within the range of proofs in the case". *Drayton v. Jiffee Chemical Corp.,* 591 F.2d 352, 366 (6th Cir.1978). The rule is that once the existence of damage is shown with reasonable certainty, difficulty in calculating the amount with mathematical precision will not defeat recovery. *Perma Research and Development v. Singer Co.,* 542 F.2d 111 (2d Cir.), *cert. denied,* 429 U.S. 987, 97 S.Ct. 507, 50 L.Ed.2d 598 (1976).

In the case at bar, the jury received absolutely no instruction as this rule. Fur-

ther, the only evidence of a potential "doubling" in Blackwell's income during the period between termination and trial was his own speculation about his sales ability in a new area. This is clearly contrary to a finding of "certain" damage. *See Loubrido v. Hull Dobbs Company of Puerto Rico, Inc.,* 526 F.Supp. 1055 (D.P.R.1981); *Buchholz v. Symons Manufacturing Co.,* 445 F.Supp. 706 (E.D.Wisc.1978). [Award of commissions in ADEA damages is permissible only when they can be predicted with reasonable certainty.]

Moreover, the jury was never charged that if it did specifically find a willful violation, it should thereupon double what it found to be the actual damages. The wider accepted practice would dictate that the jury should have only been instructed to enter a finding as to the factual issue of willfulness. The liquidated damages should thereafter be computed and assessed by the trial court. *Mistretta v. Sandia Corp.,* 639 F.2d 588 (10th Cir.1980). This is analogous to the proper procedure in treble damage anti-trust actions.

Assuming *arguendo* that the jury instructions in the case at bar were not by themselves sufficient to warrant a reversal herein, the absence of basic instructions in the area of damages clearly resulted in an award which cannot be supported on review. Chiefly, the jury must know that each claimed element of back pay such as commissions, bonuses, etc. must be shown to exist with reasonable certainty before proceeding to consider the amounts thereof; and further, the jury should not be instructed or presumed to return more than an amount of actual damages.

For the reasons stated hereinabove, I respectfully dissent and would reverse the verdict and remand for a retrial.