849 F.2d 1472
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Earl BIGAM, Plaintiff-Appellant,
v.
The CITY OF PEPPER PIKE, Defendant-Appellee.
 No. 87-3320.
 United States Court of Appeals, Sixth Circuit.
 June 27, 1988.
 
 Before WELLFORD and ALAN E. NORRIS, Circuit Judges, and JULIAN A. COOK*, District Judge.
 PER CURIAM.
 
 
 1
 Earl Bigam, a college graduate and former communications officer in the United State Navy, was initially employed at age fifty-four by Pepper Pike in 1974 as a part-time police dispatcher. In March 1981, Pepper Pike discharged Bigam, who then filed a complaint with the Equal Employment Opportunity Commission alleging age discrimination. Bigam and Pepper Pike settled the matter, however, and Bigam was reinstated in April 1982.
 
 
 2
 As a police dispatcher, Bigam was responsible for taking incoming telephone calls for the police, fire and service departments and for general city hall business, and then acting upon those calls in accordance with policy. The event which precipitated Bigam's second discharge by Pepper Pike occurred in the early morning of May 17, 1982. Bigam was on duty and received a phone call on the emergency line from John T. Avery, Mayor of Pepper Pike. According to Bigam, Avery often called on the emergency line requesting that he be put through to the fire department.[1] On the morning in question, Bigam asserts that Avery simply identified himself and asked for the fire department. He allegedly did not state whether he had an emergency, nor did Bigam ask him; instead, Bigam put the Mayor on "hold" so that he could transfer the call. In fact, Avery's daughter had suffered an allergic reaction to medication and required emergency medical attention. Avery spoke with a fire department official, who immediately dispatched an ambulance to Avery's home. Upon learning of the emergency, Bigam dispatched a police car to assist the fire department emergency squad and logged the call as an emergency. According to Bigam, the response to Avery's call took only two minutes, which was the average response time for an emergency call.
 
 
 3
 Avery, on the other hand, contends that he did advise Bigam that he had a medical emergency but was nevertheless placed on "hold" by Bigam without any opportunity to give additional information. Ambulance policy in effect since 1976 in the City required the dispatcher to obtain the location, nature of injury, and number injured from the caller and then to relay that information immediately to the fire department.
 
 
 4
 Later in the day on May 17, 1982, a secretary at the Police Department called Bigam and advised that Mayor Avery was upset by his handling of the telephone call. Bigam called Police Chief Toth to request that the recording of the call, which it was the practice of the city to make, be reviewed. He was informed that the call had been erased.
 
 
 5
 On May 19, 1982, Bigam was contacted at home by Toth and informed that he was being discharged. According to Bigam, Toth indicated to him that Avery had made the decision to discharge, although Toth would have only suspended him. Toth's version was that the discharge decision was his decision as well as Avery's. In any event, by letter dated May 19, 1982, Toth affirmed Bigam's discharge, stating that the termination resulted from the improper handling of Avery's emergency call. Avery and Toth now aver that Bigam's discharge was also based upon prior occasions of sleeping on duty. Bigam denies that he was ever warned or disciplined for sleeping on duty.
 
 
 6
 Bigam contends that other workers younger than he who mishandled police or emergency calls were suspended rather than terminated. He also contends that he was denied promotion to a full-time position while other, younger workers were allowed to advance, and that he was forced to train younger workers for the full-time positions he was denied. Bigam's complaint, however, was based solely upon his discharge, not upon a failure to promote him.
 
 
 7
 Both sides submitted and responded to interrogatories and requests for production of documents. Pepper Pike took Bigam's deposition, but Bigam took no depositions. More than two years after the complaint had been filed, Pepper Pike made its motion for summary judgment. The magistrate, to whom the case had been assigned, filed a report and recommended that the defendant's motion be granted on the ground that Bigam had failed to come forward with sufficient evidence to make out a prima facie case because he had presented no evidence that he was replaced by a younger person, relying primarily upon Wilkins v. Eaton Corp., 790 F.2d 515 (6th Cir.1986) and Blackwell v. Sun Electric Corp., 696 F.2d 1176 (6th Cir.1983). The magistrate also found that Bigam's evidence of discriminatory treatment in being discharged rather than merely suspended was insufficient because there was no evidence that the younger dispatcher who had been merely suspended was similarly situated or had mishandled a phone call in the same manner.
 
 
 8
 Bigam filed exceptions to the magistrate's report and submitted his affidavit specifically responding to the asserted deficiency in his proof noted by the magistrate. His affidavit stated that he was replaced by Mark Armbruster, who was under thirty years old at the time, and that every other dispatcher hired by Pepper Pike following his termination was younger than he. (Bigam conceded that Armbruster had subsequently been terminated also).
 
 
 9
 The district court adopted the "Report and Recommended Decision" of the magistrate by an order granting summary judgment. The order stated that due consideration had been given to Bigam's objections. This appeal followed.
 
 
 10
 The ultimate issue in an age discrimination action is whether age was a determining factor in the employee's discharge. Merkel v. Scovill, Inc., 787 F.2d 174, 177 (6th Cir.), cert. denied, 107 S.Ct. 585 (1986); Ackerman v. Diamond Shamrock Corp., 670 F.2d 66 (6th Cir.1982). The criteria to be established by plaintiff to make out a prima facie case are that (1) the employee was a member of the protected class; (2) he was discharged; (3) he was qualified for the job; and (4) he was replaced by a younger worker outside the protected class. Blackwell v. Sun Electric Corp., 696 F.2d 1176, 1180 (6th Cir.1983). This court has rejected strict application of the McDonnell Douglas v. Green, 411 U.S. 792 (1973), criteria in age discrimination cases, and, consequently, a plaintiff can also establish a prima facie case with "statistical information, direct evidence of discrimination, and circumstantial evidence other than that which is used in the McDonnell Douglas criteria." Blackwell, 696 F.2d at 1180.
 
 
 11
 In the present case, the magistrate considered both the McDonnell Douglas elements and Bigam's circumstantial evidence of age discrimination in the form of disparate treatment. Bigam's submission of additional evidence to the district court in the form of his affidavit was proper under Fed.R.Civ.P. 72(b), which specifies that the district court shall make "a de novo determination upon the record, or after additional evidence, of any portion of the magistrate's disposition to which specific written objection has been made in accordance with this rule." See also 28 U.S.C. Sec. 636(b)(1). The question remains as to whether this affidavit created a genuine issue of material fact with regard to whether Bigam was replaced by a younger person. Fed.R.Civ.P. 56(e) requires that affidavits opposing summary judgment be made on personal knowledge. Bigam's affidavit neither states that he has personal knowledge that he was replaced by Armbruster and that all other dispatchers following his termination were younger, nor does it give any indication of how he came to know that information. (Another dispatcher might well have been fifty-two or fifty-three years of age, and this would not be a circumstance helpful to plaintiff.) Bigam contends that his deposition testimony that he kept in touch with several members of the police department following his discharge is sufficient to infer reasonably the basis of his purported knowledge. Bigam's additional contention is that Pepper Pike failed to answer his interrogatory targeted towards this issue, but he neither moved to compel a response to the interrogatory, nor for a continuance in order to obtain this discovery information. Bigam was granted additional time to respond to Pepper Pike's motion for summary judgment.
 
 
 12
 The motion for summary judgment imposes upon the movant the burden of demonstrating that no genuine issue of material fact exists. In considering such a motion, the district court must give the opposing party all reasonable inferences to be drawn from the proof which must be considered in a light favorable to the party opposing the motion. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Articles of Device, etc., 527 F.2d 1008 (6th Cir.1976). At the same time, the opposing party, here Bigam, must make "a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." Celotex Corporation v. Catlett, --- U.S. ----, 106 S.Ct. 2548, 2553 (1986). See Fed.R.Civ.P. 56(c) and (e).
 
 
 13
 The magistrate concluded that Bigam failed to present sufficient evidence that the disparity in treatment he alleges was based upon similar circumstances. See Wilkins v. Eaton Corp., 790 F.2d 515 (6th Cir.1986). In order to rely upon the disparity in treatment as circumstantial evidence of age discrimination, Bigam needed to show that the City treated him differently for essentially the same kind of conduct. Wilkins, 790 F.2d at 522. The magistrate also concluded that Bigam failed to present sufficient evidence that he was replaced by a younger person. See Wilkins, 790 F.2d at 520.
 
 
 14
 Bigam's affidavit, however, was filed following the magistrate's recommendation in this case. It was a proper submission under the rules as previously pointed out and deserves consideration if not inconsistent with Bigam's deposition or duplicative of other proof. It avers a general pattern of age discrimination directed against Bigam prior to his termination although he sought relief only for what he claimed was a wrongful termination under ADEA.[2] Such evidence, if substantiated, might be relevant in a trial where credibility of witnesses as to issues relating to the true reasons and motivation for the discharge in question may be critical. The reasons claimed by the City to be the basis for its action may be shown to be pretextual by the plaintiff.
 
 
 15
 Also, it is evident that there is a dispute between Avery and plaintiff as to exactly what was said in respect to the emergency nature of the call in controversy.[3] There is a claimed dispute as to whether another, younger dispatcher was suspended, rather than fired, for what is claimed to be a similar incident of mishandling a call. There is a dispute as to whether Bigam was also guilty over a relevant period of sleeping on the job, and whether this alleged deficiency in performance was figured in the termination of the plaintiff. There is, finally, a dispute as to whether a person younger than forty was hired or transferred into the job left by the forced Bigam vacancy. These disputes, coupled with a recent prior similar age discrimination claim made by plaintiff and settled by the City indicate that there are genuine issues of material fact which preclude the grant of summary judgment.[4]
 
 
 16
 In addition to all these stated uncertainties about whether this case was ripe for summary judgment, we note that the district court's order leaves us further uncertain as to whether he reviewed the entire evidence in the case including Bigam's affidavit de novo before granting summary judgment. The district judge stated only that he "reviewed the Report and Recommended Decision of the Magistrate ... also reviewed the objections filed to the Magistrate's report. Upon due consideration, the Court hereby adopts the Magistrate's report as findings of fact and conclusions of law...."
 
 
 17
 In light of the foregoing unsettled questions about the grant of summary judgment by the district court, we REMAND this case to that court for clarification and/or for further consideration of the entire record regarding the propriety of summary judgment. Such remand does not necessarily preclude submission of further proof by either party.
 
 
 18
 We therefore REMAND this case for the reasons and purposes indicated.
 
 
 
 *
 The Honorable Julian A. Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 In his deposition, Bigam initially stated that there was no non-emergency line. He later made reference to a "city hall line" to which he normally referred individuals with non-emergency matters
 
 
 [2]
 Bigam also claimed in his deposition animosity directed against him by reason of age by a chief dispatcher, allegedly a much younger individual
 
 
 [3]
 There is also Bigam's allegation, which was not denied by the City, that somehow this call was "erased" from the taped record of such calls normally made by the City
 
 
 [4]
 Bigam testified also in his deposition: "I feel it was in retaliation for having filed the previous age discrimination case." He, however, made no claim of retaliatory discharge in his complaint