David P. MARTINCIC, Plaintiff,

v.

The URBAN REDEVELOPMENT AUTHORITY OF PITTSBURGH, Defendant.

Civ. A. No. 92–2154.

United States District Court,
W.D. Pennsylvania.

Feb. 16, 1994.

**1074**

Adrienne Johnson, Beaver, PA, for plaintiff.

Sharon M. O'Neill, Pittsburgh, PA, for defendant.

### MEMORANDUM OPINION

COHILL, District Judge.

Before the Court are (1) a Motion in Limine (Doc. 25), and (2) a Motion For Leave to Amend Pretrial Statement (Doc. 24) filed by plaintiff David P. Martincic. In the motion in limine, plaintiff asks us (1) to admit into evidence a report that provides statistical data with respect to plaintiff's claim of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et*

*seq.* (ADEA); and (2) to instruct the jury, as an evidentiary presumption, that defendant refused to promote qualified candidates over the age of 40 because personnel records were destroyed by defendant.

In the motion for leave to amend, plaintiff seeks to amend his pretrial statement to include (1) a purported expert's report, and (2) a claim for salary-differential damages dating back to December 9, 1988. For the reasons below, we will deny plaintiff's motion in limine in its entirety, and deny plaintiff's leave to amend in its entirety.

### I.  *Case Summary*

This is an action for failure-to-promote age discrimination under the ADEA. Plaintiff David Martincic was born on July 11, 1946 and was hired by defendant Urban Redevelopment Authority of Pittsburgh (URA) on February 19, 1980 as a Construction Advisor in its Housing Department, a position he presently retains. Plaintiff's primary responsibility is to prepare home-improvement specifications for homeowners who receive loans through URA's home repair programs. Plaintiff also performs home inspections during the construction and recommends payments to contractors.

On September 1, 1991, Stephen Leeper, Director of the Housing Department, announced a department reorganization in which Larry Landy, then age 39, was named Design and Construction Manager and placed in charge of all construction personnel. Mr. Landy had been hired by URA as a Construction Advisor on September 23, 1985. On July 11, 1988, Mr. Landy was promoted to Senior Rehabilitation Advisor, a position for which the plaintiff also applied but was not selected. Mr. Landy was subsequently promoted to Senior Rehabilitation Supervisor on April 3, 1989. The plaintiff had applied, and was rejected, for this position.

The Housing Department reorganization announced in September 1991 did not result in changes in grade or pay until January 1, 1992. URA's Pay Plan Committee approved changes in grade, pay, job title, and job description for five managers, including Mr. Landy. All of these managers had been supervisors prior to the reorganization. The

plaintiff had never been a supervisor and was one of seven Construction Advisors and one Senior Construction Advisor on staff in 1991, none of whom was promoted as a result of the reorganization.

## II. Motion in Limine

### A. Statistical Report of Mr. Jay K. Jarrell

█ Plaintiff seeks to admit evidence at trial in the form of a report by Mr. Jay K. Jarrell, who is an "Accredited Personnel Diplomate" and "Certified Personnel Consultant." Mr. Jarrell's report is based on various URA internal personnel documents, including URA regulations, the URA Affirmative Action Program, job descriptions, payroll records, and summaries of personnel actions. In his report, Mr. Jarrell "noted 62 personnel actions between January 15, 1988 and June 1, 1993 that involved more than a simple grade or title change." Plaintiff's Motion for Leave to Amend Pretrial Statement at 4. We are not told what the personnel actions were.

Mr. Jarrell reported the following observations: (1) in 51 of the 62 actions, the "chosen" candidate—we are not told for what candidates were chosen, but we assume they were chosen for promotions—was under age 40; (2) in 9 of the 51 cases, there were unchosen candidates who were over age 40, but in 34 other cases the ages of the unchosen candidates were not known (Mr. Jarrell does not indicate the ages of the candidates in the 8 remaining cases); and (3) in 24 actions involving jobs at grade level 7 or above, all of the chosen candidates were under age 40; Mr. Jarrell was not able to determine if there were any candidates over age 40 in 20 of these 24 cases.

Mr. Jarrell admits that in most of the 62 actions, he was unable to determine whether there were any candidates over age 40. Thus, he referred to demographic data of Allegheny County, Pennsylvania, which indicate persons age 40 and older outnumber those between ages 20 and 39 by roughly 3 to 2. His conclusion was that the defendant therefore must have refused to promote candidates over age 40.

█ Mr. Jarrell readily concedes in his report that he could not tell whether there even were candidates over age 40 available in most of the 62 "personnel actions." Thus, we do not know whether the defendant promoted under–40s because those were the only candidates available. Nor do we know if any over–40 candidates were offered, but declined, promotions. And because we are not told what personnel actions Mr. Jarrell had in mind, we do not know whether they were promotions from entry level positions which, we assume, ordinarily go to younger workers. Finally, the leap to Allegheny County census data to infer that many over–40s were passed over for promotion is simply too attenuated to be of any value. At a minimum, statistical comparison must be between the age composition of the at-issue jobs and the age composition of the qualified population in the relevant labor market. *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419 (10th Cir.1993). Allowing the broad and meaningless comparison that plaintiff seeks would require an employer to consult the latest census data before each managerial decision. We do not read the ADEA to require this.

We note that Mr. Jarrell apparently has no education or background in the social science of statistics in order to qualify as an expert. And he has offered no semblance of statistical analysis that would breathe life into his bare numbers. In short, plaintiff has failed to indicate how defendant's promotion practices lead to a result different from a simply random promotion practice. *See, e.g., Hazelwood School District v. United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977); *Wingfield v. United Technologies Corp.*, 678 F.Supp. 973 (D.Conn.1988) (holding that expert statistical interpretation, including standard deviation analysis, is required to admit statistical conclusions).

Accordingly, we cannot admit the plaintiff's proffered evidence. Our conclusion is reinforced by the recent Opinion of the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), wherein the court reminded us that the Federal Rules of Evidence assign to the trial judge, as a "gatekeeper," the "task of ensur-

ing that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at ——, 113 S.Ct. at 2799.

Under Federal Rule of Evidence 403, relevant evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." Plaintiff's attempt at statistical evidence is deficient because it fails to correlate, in any mathematically meaningful way, the defendant's personnel decisions with employee ages. Plaintiff's meaningless statistics therefore present the dangers of misleading and confusing the jury, as well as unfairly prejudicing the defendant, with respect to defendant's conduct.

B. *Evidentiary Presumption Regarding Destruction of Records*

■ In accordance with the ADEA, the defendant retained the personnel records of both the plaintiff and the person who received the promotions sought by the plaintiff. Pursuant to its practice initiated in 1991, defendant did destroy personnel records older than one year. According to plaintiff, this violated the ADEA, and he therefore asks us to instruct the jury that it should presume that the defendant passed over candidates over the age of 40 in each instance where personnel records were destroyed. Specifically, plaintiff cites a section of the ADEA's companion regulation:

> When an enforcement action is commenced under section 7 of the [ADEA] regarding a particular applicant or employee, the [Equal Employment Opportunity Commission] or its authorized representative shall require the employer to retain any record required to be kept under paragraph (b)(1) or (2) of this section which is *relative to* such action until the final disposition thereof.

29 C.F.R. § 1627.3(b)(3) (emphasis added). This regulation, according to the plaintiff, essentially requires employers to retain all personnel records of all employees during any period when any discrimination charge is pending against that employer. Thus, because in this case the defendant has been under pending discrimination charges since 1991, the plaintiff argues that the defendant

"has been under a continuing obligation to maintain all applications for the positions it has filled since 1991 and prior." Brief in Support of Motion in Limine at [2].

Defendant responds that an evidentiary-presumption instruction is not proper where the destruction of records was not in violation of any law or regulation. Defendant's Brief in Opposition to Motion in Limine at 3. Defendant construes the "relative to" language to mean that the retained records only must relate to the individual's charge of discrimination and others who applied for the same position. Defendant refers us to a definition of "relevant to" that is applicable in Title VII cases:

> The term "personnel records relevant to the charge," for example, would include personnel or employment records relating to the aggrieved person and to all other employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected.

29 C.F.R. § 1602.14. Based on this regulation, defendant asserts that "personnel records relevant to the charge" does not include every application for every position.

■ We agree with the defendant. At best, the records-retention regulation is ambiguous and subject to various interpretations. We will not penalize a party for choosing the narrower and less burdensome interpretation of an ambiguous regulation. Indeed, plaintiff's reading of the record-retention requirement assumes that an ADEA plaintiff may bring a claim under a *disparate impact* theory. But whether disparate impact is cognizable under the ADEA is unsettled. While we are bound by precedent in the United States Court of Appeals for the Third Circuit, which seems to suggest otherwise but pre-dates the United States Supreme Court's decision in *Hazen Paper Co. v. Biggins*, —— U.S. ——, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), *see, e.g., E.E.O.C. v. Westinghouse Elect. Corp.*, 925 F.2d 619, 627 (3d Cir.1991), we are convinced disparate

impact is not a cognizable claim under the ADEA.

## C. *Disparate treatment and disparate impact under the ADEA*

Recently the United States Supreme Court observed that it has "never decided whether a disparate impact theory of liability is available under the ADEA." *Hazen Paper,* —— U.S. ——, at ——, 113 S.Ct. at 1706. But the Court specifically held that *"[d]isparate treatment* ... captures the essence of what Congress sought to prohibit in the ADEA." *Id.* at ——, 113 S.Ct. at 1707 (emphasis added). In a concurring opinion in *Hazen Paper,* Justice Kennedy carefully pointed out that

> [The plaintiff] has advanced no claim that petitioners' use of an employment practice that has a disproportionate effect on older workers violates the ADEA. As a result, nothing in the Court's opinion should be read as incorporating in the ADEA context the so-called "disparate impact" theory of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17. As the Court acknowledges, we have not yet addressed the question whether such a claim is cognizable under the ADEA, and there are substantial arguments that it is improper to carry over disparate impact analysis from Title VII to the ADEA.

*Id.* at ——, 113 S.Ct. at 1710 (Kennedy, J., concurring) (citations omitted); *see also Markham v. Geller,* 451 U.S. 945, 948, 101 S.Ct. 2028, 2030, 68 L.Ed.2d 332 (1981) (Rehnquist, J., dissenting from the denial of certiorari); *Metz v. Transit Mix Inc.,* 828 F.2d 1202, 1216–20 (7th Cir.1987) (Easterbrook, J., dissenting) (observing that there is no support for the disparate impact theory in the text, legislative history, or purpose of the ADEA); Barbara Lindemann Schlei and Paul Grossman, *Employment Discrimination Law* 505–06 (2d ed. 1983).

■■ Disparate treatment is a claim that the plaintiff has been treated differently by the employer because of the plaintiff's age; the plaintiff's age must be "the determining factor" for the treatment. *Billet v. Cigna Corp.,* 940 F.2d 812, 817 (3d Cir.1991) (citation omitted). Disparate impact, conversely, is a claim that the employer's practices result in discrimination toward members of the protected class (under the ADEA, age 40 and above); age need not have been the determinative or even a contributing factor. Under a disparate impact theory, the accused employer may be adjudged liable even if the employer had not even considered or been aware of the ages of the employees. But an ADEA plaintiff must prove that age was the determinative factor in the alleged discriminatory treatment. *Billet,* 940 F.2d at 817. In other words, to violate the ADEA the accused employer must have thought "I will discriminate against Doe because of Doe's age." Anything less is not enough.

■ The test is the employer's motivation or intent. Disparate impact, in contrast, requires no inquiry into the employer's intent. Thus under disparate impact, the ADEA may be violated where an employer was motivated solely by factors other than age. *See e.g., Hazen Paper,* —— U.S. at ——, 113 S.Ct. at 1705 ("Proof of discriminatory motive ... is not required under a disparate-impact theory") (citation omitted) (construing Title VII of the Civil Rights Act of 1964). For example, an employer may use a promotion policy that is based solely on merit. If younger workers happen to be promoted at a higher rate than older workers, then the plaintiff's prima facie case for disparate-impact age discrimination is satisfied—even though age may not have been considered in the promotion decisions. Surely this cannot be age discrimination, at least not without Congress' imprimatur. Indeed, requiring an employer to promote in such a way as to "even up" the promotions, absent evidence of age bias, is an undue interference in the management of a business. *See, e.g., Smith v. Goodyear Inc.,* 895 F.2d 467, 472 (8th Cir.1990) (noting that the court "will not second guess business decisions made by employers, in the absence of some evidence of impermissible motives").

In addition to the logical incompatibility between an ADEA plaintiff's burden of proof and the disparate impact theory, we find it significant that Congress has not sanctioned disparate impact under the ADEA. Section 105 of the Civil Rights Act of 1991, which amended section 703 of the Civil Rights Act

# 1078

of 1964 (42 U.S.C. § 2000e–2) by adding a new subsection (k)(1)(A), explicitly lists the types of discrimination cases where disparate impact analysis is proper:

> (k)(1)(A) An unlawful employment practice based on disparate impact is established under this subchapter only if—
>
> > (i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of *race, color, religion, sex, or national origin*. . . .

Civil Rights Act of 1991, Pub.L. No. 102–166, § 105, 105 Stat. 1071, 1074 (1991) (emphasis added). We believe that Congress' recent decision to include disparate impact in Title VII claims based on race, color, religion, sex, and national origin, but not to suggest disparate impact analysis for age in the ADEA, or elsewhere, was not an oversight. Rather, Congress recognized that disparate impact simply does not comport with the plaintiff's burden of proof in ADEA cases.

In summary, we will deny plaintiff's motion in limine to admit Mr. Jarrell's report because we are convinced that it will not aid the trier of fact in determining whether the defendant violated the ADEA in light of the insufficient mathematical rigor and unconvincing factual predicate for the report. We will also deny plaintiff's request for a jury instruction requiring an evidentiary presumption that defendant passed over members of the ADEA-protected class, because defendant violated no law or regulation in destroying its personnel records older than one year.

### III. *Motion for Leave to Amend*

█ For the same reasons as above, we will deny plaintiff's request to amend his pretrial statement to include Mr. Jarrell's report. Plaintiff also seeks to amend his pretrial statement to include salary-differential damages dating back to December 9, 1988. Defendant responds that plaintiff may not claim damages for any conduct by the defendant prior to January 1, 1992 because that is the day the person who won the promotion that plaintiff sought was awarded a salary increase.

Plaintiff alleges in his complaint retaliatory discrimination since 1988, but he does not allege any conduct affecting his salary until a promotion denial in September 1991. Complaint ¶ 5. The salary increase attendant to the disputed promotion did not take effect until January 1, 1992. Therefore, as his original pretrial statement recognizes, plaintiff is not entitled to salary-differential damages prior to January 1, 1992.

### IV. *Conclusion*

For the foregoing reasons, we will deny plaintiff's motion in limine in its entirety, and we will deny plaintiff's motion for leave to amend his pretrial statement in its entirety.