**Richard G. BROTHERS, Plaintiff,**

v.

**NCR CORPORATION, Defendant.**

**No. 1:94CV0461.**

United States District Court,
N.D. Ohio,
Eastern Division.

May 10, 1995.

James L. Hamilton, Law Offices Of James L. Hamilton, Westlake, OH, for plaintiff.

Martin T. Wymer, Duvin, Cahn & Barnard, Cleveland, OH, Shelley Reed, AT & T Global Information Solutions Co., Law Dept.—WHQ4, Dayton, OH, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Plaintiff Richard G. Brothers alleges that NCR Corporation ("NCR") violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 through 634, and breached an employment contract with him when it terminated his employment. This Court has subject matter jurisdiction over the federal claim based on the federal question raised, and over the state claim based on supplemental jurisdiction. NCR has filed a motion for summary judgment. For the reasons set forth below, NCR's motion is granted and judgment is entered in its favor.

### I.

It is not disputed that Data Pathing, Inc. ("DPI"), a California corporation, hired Brothers in 1969. The parties disagree over the immaterial fact as to Brothers' title and the exact date of any promotion, although the parties agree that throughout his career Brothers was involved in the sale of computer products.

In 1973, DPI promoted Brothers to the position of sales representative. In 1976, DPI became a wholly-owned subsidiary of NCR. On September 23, 1976, Brothers and DPI/NCR entered a non-disclosure agreement which provided that "DPI may change the rate, form and frequency of compensation or terminate [Brothers'] employment without notice." Brothers Dep. Exh. 2. In 1978 Brothers was promoted to the position of District Manager. In 1985 Brothers was reclassified as an Account Executive.

NCR's United States sales force is organized into seven field sales divisions. NCR is subdivided within each sales region into vocational and industrial areas, including Financial, Retail, CI/MEG (Commercial, Industrial, Medical, Educational, Governmental), and Cooperative Marketing. Generally, the areas are organized along customer industry

lines. Each area is supervised by a vice president, to whom the regional director reports. In turn, district managers report to the regional director.

It is not disputed that district managers are responsible for assigning sales quotas and determining appropriate responses when a salesperson fails to meet the assigned quota. Except for a brief period in 1992 when Brothers was supervised by District Manager Robert Riazzi, during all relevant times he was supervised by District Manager Michael Domka.

Since September 1989, Brothers worked as an Account Executive in the CI/MEG department of the Mideastern region sales division, which consists of approximately 2,000 employees, and primarily was responsible for selling computer software to commercial and industrial customers. It is not disputed that for 17 of the 23 years he was employed by DPI and its successor corporations, Brothers met his sales quotas. The parties agree that Brothers met his sales quota in 1990, but failed to meet his sales quotas for 1988, 1989, 1991 and 1992, and for the first quarter of 1993. On August 22, 1991, Brothers was warned by Domka that failure to meet his quota would be grounds for termination or demotion. Defendant's Exh. 11. On November 3, 1992, Riazzi placed Brothers on a Performance Improvement Plan ("PIP") and notified Brothers that "[i]n the event that you do not achieve your 1992 order quota ... and do not make your 1st quarter–1993 order quota, your employment will be terminated." Brothers Dep. Exh. 8. On February 11, 1993, Domka, who had returned to replace Riazzi as Brothers' district manager, notified Brothers that "in the event that you fail to meet the stated [PIP] guidelines, your final day of employment will be Friday, March 5, 1993." Defendants Exh. 16. On March 1, 1993, Domka notified Brothers that his employment was terminated effective March 5, 1993. Defendants Exh. 17. At the time of his termination, Brothers was 51 years old. It is not disputed that NCR did not hire another employee to assume Brothers' former duties.

## II.

Federal Rule of Civil Procedure 56(c) governs summary judgment motions. Specifically, Rule 56(c) provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ The moving party must demonstrate through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2552. The burden on the nonmoving party is to show, through the use of evidentiary materials, the existence of a material fact which must be tried. *Id.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. "The question on review of a summary judgment 'is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law'" *National Rifle Ass'n v. Handgun Control Fed'n,* 15 F.3d 559, 561 (6th Cir.) (quoting *Anderson,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, (1986)), *cert. denied,* —— U.S. ——, 115 S.Ct. 71, 130 L.Ed.2d 26 (1994). The court's task is to engage in "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved in favor of either party." *Id.,* at 250, 106 S.Ct. at 2511.

■ The nature of materials properly presented in a summary judgment pleading is set forth in Rule 56(e):

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein ... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The moving party, however, is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ In order to determine whether to grant a summary judgment motion, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n. Inc.,* 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. In most civil cases, therefore, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512.

## III.

### A. *Disparate Treatment*

■ The ADEA provides in pertinent part:

It shall be unlawful for an employer—

(1) to ... discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; ...

29 U.S.C. § 623(a). A plaintiff raises the presumption of discrimination by showing that:

(1) he was a member of the protected class (age 40 to 70);

(2) he was subjected to adverse employment action;

(3) he was qualified for the position; and

(4) he was replaced by a younger person.

*Simpson v. Midland–Ross Corporation,* 823 F.2d 937, 940 (6th Cir.1987) (relying on *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

■ In cases involving a reduction in the work force, or where the plaintiff was not replaced, the fourth element of the *prima facie* case is modified. Instead of having to demonstrate that he was replaced by a younger person, the plaintiff must offer additional direct, circumstantial or statistical evidence to indicate that the employer singled out the employee for unlawful reasons. *See Barnes v. GenCorp, Inc.,* 896 F.2d 1457, 1465 (6th Cir.1990); *LaGrant v. Gulf and Western Mfg. Co.,* 748 F.2d 1087, 1090 (6th Cir.1984).

■ "Proof of the four *McDonnell Douglas* elements or other direct or statistical proof raises a rebuttable presumption of discrimination. The burden of production then shifts to the defendant employer to provide a legitimate nondiscriminatory reason for the action taken." *Simpson,* 823 F.2d at 940. The employee then bears the burden of showing that the proffered reason was not the true reason for the employment decision, and that the real reason was the discriminatory motive. *Id.; see also Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 312–14 (6th Cir.1989). The employer's justi-

fication "cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason" for the adverse action. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993).

■ The *McDonnell Douglas* approach is not mechanistically applied in the Sixth Circuit. *Blackwell v. Sun Elec. Corp.,* 696 F.2d 1176, 1179 (6th Cir.1983). The ultimate issue in age discrimination cases is whether age was a determining factor in the employer's decision. *Id.,* at 1180. This is determined through a case-by-case approach to avoid interfering with an employer's legitimate business decisions. *Id.,* at 1179; *see also Laugesen v. Anaconda,* 510 F.2d 307 (6th Cir.1975).

It is beyond dispute that Brothers has satisfied the first two prongs of his *prima facie* burden. Brothers was 51 years old at the time of his termination. For purposes of this motion, the Court assumes without deciding that Brothers has met his *prima facie* burden as to the third prong of his *prima facie* burden.

In order to meet the fourth element of his *prima facie* burden, Brothers argues that he was similarly situated to other employees, all under the age of 40. Namely, Brothers claims that Domka, Glen Brzuziewski and Jeno Mozes also failed to meet their quotas, but were not terminated by NCR. Brothers offers an affidavit from Luke Madden, a former district manager for NCR, who worked for NCR from 1983 until January 1991. Madden attests that Brothers sold products substantially similar to products sold by Glen Brzuziewski and Jeno Mozes, that Brzuziewski and Mozes were measured by the same standards and conditions as Brothers, and that Brzuziewski, Mozes and Brothers were supervised by NCR's Vice President of its United States group, J.R. Poole. Brothers alleges that his supervisor, Domka, also failed to meet his quotas, but was not terminated. Additionally, Brothers offers evidence that his former supervisor Robert Riazzi referred to his sales group as "old farts," and expressed displeasure to a former NCR district manager over having to supervise a sales staff made up primarily of older individuals.

■ In order for an employee member of a protected class to be "similarly situated" to an employee who is not a member of a protected class, the employees must be similarly situated in all respects.

[T]o be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992).

■ Brothers has failed to satisfy the fourth element of his *prima facie* burden. The evidence offered by Brothers is insufficient to support any inference that Domka, Brzuziewski and Mozes were similarly situated to him, or that Brothers somehow was treated differently than younger employees who also failed to meet their quotas. Domka was Brothers' supervisor; it is self-evident that as his supervisor Domka is not similarly situated to Brothers. Additionally, Madden lacks sufficient personal knowledge to establish that he knew the standards by which Brzuziewski, Mozes and Brothers were measured. Madden does not attest that he supervised Brzuziewski, Mozes or Brothers or otherwise was involved in their supervision. Moreover, Madden was terminated more than two years prior to the termination of Brothers.

Most importantly, however, the employees are not similarly situated because they were not supervised by the same individual. The Sixth Circuit Court of Appeals in *Mitchell* was clear; in order for an employee to be similarly situated to an aggrieved individual there must not be an appreciable difference between the employees that warrants different treatment. *Id.,* at 583. Poole, as the Vice President for NCR's United States operations, was not Brzuziewski's, Mozes' or Brothers' supervisor. There is no evidence that Poole played any role in the day-to-day

operations of NCR as they related to Brzuziewski, Mozes or Brothers, was responsible for overseeing their efforts, reviewing their work, setting their quotas, hiring or firing, or was otherwise involved at any level in supervising, in the ordinary sense of the word, the employees' work. There is no material fact at issue, therefore, that these employees were not similarly situated to Brothers.[1]

▆▆ Brothers additionally offers evidence that Riazzi referred to his sales group as a bunch of "old farts" for the purpose of demonstrating that NCR's proffered reason for his termination was a pretext for unlawful discrimination. Whether the Court considers the evidence of Riazzi's comment for the purpose of Brothers' *prima facie* burden or for the purpose of rebutting a proffered explanation is irrelevant—the alleged comment made by Riazzi is too vague to constitute direct evidence of discrimination, too distant in time from Brothers' termination to have been related to the termination, and too removed from the employment decision at issue to support any inference of discrimination. *See, e.g., Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 314 (6th Cir.1989) (statement by immediate supervisor that he "needed younger blood" insufficient to create material issue of fact to preclude summary judgment).

Accordingly, this Court finds that Brothers has failed to meet his *prima facie* burden to produce evidence sufficient to support any reasonable inference that he was discriminated against on the basis of age, and grants NCR's motion as to Count 1 of Brothers' complaint.

### B. *Disparate Impact*

▆▆ Although the Civil Rights Act of 1991 neither expressly approves nor disapproves the use of a disparate impact theory to establish a violation of the ADEA, and the Supreme Court has refrained from deciding whether the disparate impact theory is available under ADEA, *Hazen Paper Co. v. Biggins,* —— U.S. ——, —— ––——, 113 S.Ct. 1701, 1705–06, 123 L.Ed.2d 338 (1993), prior

to *Biggins,* plaintiffs in the Sixth Circuit have been permitted to use the disparate impact theory developed in cases brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, to prove violations of ADEA. *See, e.g., Lyon v. Ohio Education Ass'n,* 53 F.3d 135, 139 n. 5 (6th Cir.); *Abbott v. Federal Forge, Inc.,* 912 F.2d 867, 872 (6th Cir. 1990). Absent express statutory language prohibiting the use of disparate impact in age discrimination cases, or a clear holding from the Supreme Court or the Sixth Circuit disallowing its use, a plaintiff may establish a violation of the ADEA by offering evidence that an employment practice, which appears neutral on its face, has a disproportionate affect on employees over the age of forty. *But see Martincic v. Urban Redevelopment Authority,* 844 F.Supp. 1073 (W.D.Pa.1994). In order to establish a *prima facie* case of discrimination under a disparate impact theory, Brothers must: (1) identify an employment practice used by NCR; (2) demonstrate that the employment practice at issue caused an adverse effect on protected members by offering "statistical evidence of a kind and degree sufficient to show that the practice in question" has caused the adverse effect. *Id.* (quoting *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 994, 108 S.Ct. 2777, 2788, 101 L.Ed.2d 827 (1988). If a plaintiff fails to meet this *prima facie* burden, the employer is entitled to summary judgment.

▆▆ Brothers has failed to identify a specific employment practice used by NCR that caused a disproportionate impact upon employees protected by the ADEA. Brothers has not offered any statistical support or even a modicum of reliable probative evidence to establish that older employees have been disproportionately terminated by NCR, or sufficiently identified a single NCR practice responsible for the disproportions. The Court, therefore, grants NCR's motion for summary judgment as to Brothers' disparate impact claim.

### C. *Brothers' State Law Claims*

▆▆ The only issue remaining is Brothers' state law claim for breach of an employ-

---

1. Even if these employees had been supervised by the same individual, there is no evidence before the Court that these employees similarly failed to meet their quotas or were treated differently than Brothers.

**1050**

ment contract. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if the federal claims have been dismissed. Accordingly, this Court, in its discretion, dismisses without prejudice Brothers' state law claim.

### IV.

This Court finds that there are no disputed issues of material fact as to Brothers' age discrimination claims under Count I and Count III of his amended complaint, and that NCR is entitled to judgment as a matter of law.

Judgment is entered in favor of NCR on those claims; Brothers' state law claim is dismissed without prejudice. This is a final and appealable order.

IT IS SO ORDERED.