NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0118n.06
Filed: February 11, 2009

No. 08-5227

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MICHAEL D. HARMON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| EARTHGRAINS BAKING COMPANIES, INC., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: RYAN, SILER, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Michael D. Harmon appeals the district court's grant of summary judgment in favor

of his former employer, defendant Earthgrains Baking Companies, Inc. ("Earthgrains"), and

dismissal of his claim for age discrimination under the Kentucky Civil Rights Act, KY. REV. STAT.

ANN. § 344.040(1). The district court determined that Harmon failed to satisfy the fourth element

of the prima facie case of age discrimination, requiring that Earthgrains replace him with a

significantly younger person. The court also rejected Harmon's request that it consider other

evidence of alleged discrimination outside of the traditional prima facie elements.

On appeal, Harmon contends that the district court erred by failing to consider evidence of

pretext, including his contention that Earthgrains's decision to restructure its personnel rather than

replace him was part of an effort to conceal its alleged prior discriminatory conduct and defeat his prima facie case. Because the district court ruled correctly that Earthgrains did not replace Harmon with a significantly younger person, thereby defeating his prima facie case, and properly rejected Harmon's remaining pretext arguments, we affirm.

I.

On February 14, 2006, Earthgrains[1] terminated Harmon from his position as district manager. At the time of discharge, Harmon was 57 years old and had been employed by Earthgrains (or its corporate predecessors) for 28 years.

Beginning in 2002, Harmon managed Earthgrains's facility in Bowling Green, Kentucky, in its West Tennessee Zone. In October 2005, Earthgrains hired 32-year-old Bradley Jordan as vice-president of the West Tennessee Zone. Jordan supervised Harmon. At the time of Jordan's hire, Harmon's employee file contained no negative entries.

During parts of November and December 2005, Harmon missed work for health-related reasons. When Harmon returned to work in December 2005, he and Jordan toured various stores in the Bowling Green area to evaluate Harmon's performance. Harmon alleges that during that review, Jordan told him: "I bet you think that your older people are your best people . . . . well, they're not. They're not your best people."

---

[1]Earthgrains is a wholly-owned subsidiary of the Sara Lee Corporation. Although the complaint named Sara Lee as a defendant and the appellate briefs include Sara Lee as a non-appealing defendant in the case caption, the district court dismissed Sara Lee from this action by order entered November 30, 2006. The order substituted Earthgrains for Sara Lee.

Jordan's assessment of Harmon's performance in December 2005 was negative. The evaluation cited numerous areas requiring improvement, including poor product displays, products that were outdated and out-of-stock, and lack of "pride."

While reviewing Earthgrains's profit and loss statements in February 2006, Jordan learned that an Earthgrains delivery truck in Bowling Green had been involved in two separate accidents, in December 2005 and January 2006. In the first accident, the truck, operated by employee Lewis Geron, struck a deer. In the second accident, the truck, operated by employee Chuck (Casper) Glass, hit a doghouse that fell from another vehicle.

The employee drivers reported both accidents to mechanics in Earthgrains's in-house repair garage in Nashville. Although the truck sustained damage after each accident, the mechanics advised the Bowling Green employees that the truck remained functional until they could make the required repairs. Accordingly, employees in Bowling Green continued to drive it.

On February 8, 2006, Jordan confronted Harmon about the accidents. Jordan asked Harmon why he did not complete an accident report after each collision, which would have notified Jordan of the incidents. Harmon contends that at this meeting, Jordan informed him for the first time that Earthgrains's policy required that all accidents be reported to the "zone leadership team," including accidents that did not involve injuries or liability issues. Jordan suspended Harmon pending further investigation, documenting his concern that Harmon permitted the damaged truck to be driven by employees on both occasions without first insuring that it was safe to drive. The next day, Danny Gaither, zone human resources manager, notified Lisa Millisor, Earthgrains's human resources

director in Atlanta, that he intended to terminate Harmon. In his letter, Gaither recounted Harmon's

failure to follow the accident reporting procedure and concluded:

> I have attached a document that gives some particulars about Mike's tenure and records of performance. It also includes a summary of Brad's excellent and specific documentation of work withs with Mike Harmon. Brad and I have serious doubts if Mike's performance will ever improve to the level expected of a District Manager, regardless of coaching and training provided. Mike is basically a good person that does well when running a route but sorely lacks the skill sets necessary to be successful as a DM.[] We both realize that procedure would normally include a coaching for improvement or PIP before separation of employment generally occurs. Brad feels that we may have an opportunity to cut through the chase and separate employment for the serious offense of not reporting these accidents. If we don't take this opportunity we are more than likely postponing the inevitable.

After consulting with in-house counsel, Millisor accepted the recommendation to terminate

Harmon. As grounds for termination, Millisor concluded that Harmon violated company policy by

not reporting the accidents and by not requiring Geron or Glass to undergo drug testing after the

accidents. In making those determinations, Millisor was unable to reference a written policy.

Gaither conceded that the written policy, while it existed, contradicted or did not address aspects of

the spoken policy conveyed to Harmon at the meeting in which he was suspended, including the

purported requirements that all accidents be reported and that drug tests be performed. After

Harmon's discharge, Millisor and Gaither clarified the accident reporting policy to Earthgrains's

district managers.

Earthgrains did not fill the vacancy created by Harmon's termination; rather, it assigned Mark

Carter, an existing district manager in Glasgow, Kentucky, who is ten years younger than Harmon,

to manage the area previously supervised by Harmon. Carter not only absorbed permanently all of

Harmon's job responsibilities, but he also continued to serve as district manager in Glasgow, thereby increasing his workload. As part of the realignment, Earthgrains also assigned four truck routes managed previously by Carter in Leitchfield, Kentucky, to another existing district manager, Joe Kocher. According to the affidavit of Mitchel Cox, regional vice-president of Sara Lee's South Region, Earthgrains decided to make these adjustments before it terminated Harmon. It also announced its restructuring plans four months before Harmon filed the present lawsuit.

Harmon sued Earthgrains in the Warren County (Kentucky) Circuit Court, alleging that Earthgrains discriminated against him on the basis of age, in violation of KY. REV. STAT. ANN. § 344.040(1). Earthgrains removed the case to the United States District Court for the Western District of Kentucky on the basis of diversity of citizenship.

The district court granted Earthgrains's motion for summary judgment. The court first determined that Harmon failed to satisfy the fourth element of the prima facie case of age discrimination, requiring that the employer "replace" the claimant with a significantly younger person. It concluded, quoting our decision in *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335-36 (6th Cir. 2003), that "Carter's assumption of [Harmon's] duties in addition to his own does not 'constitute replacement under the law of this circuit.'" Second, the court rejected Harmon's contention that other evidence – including his age, his unblemished performance record of 28 years, and a termination that was purportedly based on an unwritten policy and recommendation by a newly-hired 32-year old supervisor – justified an inference of age discrimination. Harmon timely appeals.

II.

A district court's grant of summary judgment is reviewed de novo. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The moving party bears the initial burden of specifying the basis for its motion and of identifying the portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party must then produce specific facts demonstrating that a genuine issue of material fact exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Liberty Lobby, Inc.*, 477 U.S. at 247-48 (1986). Thus, only disputed material facts, those "that might affect the outcome of the suit under the governing law," will preclude summary judgment. *Id*. at 248.

KY. REV. STAT. ANN. § 344.040(1) makes it unlawful for an employer to discharge any individual because the person is age forty and over. The civil rights provisions under Chapter 344

of the Kentucky Revised Statutes are interpreted consistently with their federal anti-discrimination law counterparts. *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005) (citations omitted). Moreover, "[a]ge discrimination cases under the ADEA [federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634] are analyzed under the same framework as employment discrimination cases under Title VII." *Grosjean,* 349 F.3d at 335.

Harmon concedes that he has no direct evidence of discrimination by Earthgrains. Accordingly, he acknowledges that he must prove discrimination by circumstantial evidence based on the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) and refined in *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Under that standard, Harmon must first establish a prima facie case of age discrimination by demonstrating that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a person outside of the protected class. *Grosjean*, 349 F.3d at 335 (citation omitted). "In age discrimination cases, the protected class includes all workers at least 40 years old and the fourth element is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person." *Id*. (citation omitted).

If Harmon establishes a prima facie case of age discrimination, the burden then shifts to Earthgrains to articulate a legitimate, nondiscriminatory reason for terminating him. *Id*. (citations omitted). If Earthgrains meets this burden, Harmon must then "produce sufficient evidence from which the jury may reasonably reject [Earthgrains's] explanation." *Id*. (citation omitted). At all

times, Harmon retains the burden of persuasion as to the ultimate issue of age discrimination. *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992) (citing *Burdine*, 450 U.S. at 252-53).

The parties agree that the first three elements of the prima facie case are satisfied. At issue is the fourth requirement.

### III.

Harmon first contends that the district court erred in ruling that he failed to satisfy the fourth element of the prima facie case of age discrimination, requiring that Earthgrains replace him with a significantly younger person. As grounds for that argument, Harmon states:

> During Jordan's tenure, two district managers left their employment in the West Tennessee Zone, Harmon and McClane, 57 and 61, respectively. During his tenure Jordan hired two district managers, Shivian Daniels and Bradley Osterberg, 25 years old and 37 years old, respectively.
>
> Earthgrains convinced the District Court that through the repositioning of Carter no replacement of Harmon occurred. Earthgrains attempts to buttress this position by stating that the zone realignment had been in the works – at least as of the day following Harmon's termination.
>
> The *McDonnell Douglas* analysis is never to be applied mechanically. Yet in finding the replacement element has not been satisfied, the District Court has done just that. An overly technical reading of the *McDonnell Douglas* factors allows an employer to escape responsibility for discriminatory actions by such realignments and repositioning of personnel. In this case, Earthgrains realigned Harmon's previous geographic area into a different zone. That decision was conveniently discussed the day after Harmon's termination. Prior to that realignment, however, they repositioned a significantly younger manager, Carter, to cover Harmon's former territory. In the meantime, 61 year old McClane is enticed into early retirement. In addition to coaxing McClane to exit, Jordan is interviewing and hiring a 25 year old and a 37 year old as West Tennessee Zone Managers. Apparently Jordan held steadfast his belief that "[older people] . . . they're not your best people."

> Given the lost [sic] of two (2) district managers from the West Tennessee Zone, and the hiring of two (2) district managers into that zone, the realignment and repositioning of Carter in April 2006 is properly shown as the charade it is. To claim that a jury could not reasonably find is error. The discriminatory motive is more readily apparent when one considers the respective ages of the two outgoing district managers and the two that were subsequently hired.

In *Grosjean*, we affirmed the district court's grant of summary judgment in favor of the employer on an employee's age discrimination claim "on the alternative basis that Grosjean failed to make his prima facie case of age discrimination because he was not replaced by a person significantly younger than himself." 349 F.3d at 334. We stated:

> Grosjean [age 54] argues that he was initially replaced by Gallagher [age 48], who temporarily took over his duties in addition to his own. However, Gallagher's assumption of Grosjean's duties does not constitute replacement under the law of this circuit. A "person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) (citing *Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1117 (6th Cir. 1980)); *see also Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992) ("Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement."); *Godfredson v. Hess & Clark*, 173 F.3d 365, 372-73 (6th Cir. 1999) (reaffirming *Barnes*, 896 F.2d at 1465).

*Id.* at 335-36.

Applying *Grosjean*, the district court correctly concluded that Earthgrains did not "replace" Harmon. The evidence conclusively establishes that Carter, an existing Earthgrains employee, completely absorbed Harmon's duties, in addition to retaining his preexisting duties, thereby increasing Carter's workload. Although as part of this transition Earthgrains assigned four truck routes previously managed by Carter to another existing district manager, Joe Kocher, Earthgrains

did not hire a new employee to fill the vacancy left by Harmon; rather, it redistributed all of his prior duties among its existing district managers. Therefore, under *Grosjean* and the cases upon which it relied, Harmon was not "replaced."

IV.

Although Harmon's failure to establish a prima facie case of age discrimination requires dismissal of his claim, he nevertheless attempts to rescue it by arguing that the district court erred by failing to look beyond the traditional elements of the prima facie case and consider other evidence suggesting discriminatory conduct by Earthgrains. Specifically, Harmon urges us to consider the context in which Earthgrains repositioned or reassigned existing employees to Harmon's vacancy. Specifically, he implies that Earthgrains made such changes for the unscrupulous purposes of concealing its discriminatory conduct and defeating his prima facie case, i.e., it "conveniently" realigned its zones and repositioned its personnel the day after it terminated him. In this way, Harmon's argument is actually based on "pretext," namely, that Earthgrains's decision to restructure its personnel was a pretext for concealing its discrimination.

An inquiry into the legitimacy of the employer's articulated reasons for not replacing a plaintiff may, given the proper circumstances, be appropriate at the prima facie stage. Such an approach is consistent with the flexible, adaptive nature of the *McDonnell Douglas* framework. *See McDonnell Douglas*, 411 U.S. at 802 n.13 ("[T]he prima facie proof . . . is not necessarily applicable in every respect to differing factual situations."). We have repeatedly cautioned that "the *McDonnell Douglas* test is not to be applied mechanically"; rather, a "case-by-case approach" should be applied,

focusing "on whether age was in fact a determining factor in the employment decision." *Barnes*, 896

F.2d at 465. *See also Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176, 1179-80 (6th Cir. 1983)

(rejecting a rigid application of the *McDonnell Douglas* formula and holding that the *McDonnell*

*Douglas* elements of the prima facie case are "guidelines" and not "exclusive criteria"). In *Grosjean*,

we acknowledged the interrelationship between the steps of the *McDonnell Douglas* analysis: "In

some cases, plaintiff's evidence establishing the prima facie case can also be sufficient to meet one

or more of the elements necessary to rebut the defendant's proffered non-discriminatory reasons."

349 F.3d at 335 (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149 (2000)).

Therefore, although we may consider the legitimacy of Earthgrains's restructuring decisions

at the prima facie stage, Harmon's assertion that the district court erred by refusing to depart from

the traditional prima facie elements is without merit. The district court properly recognized that

"*Blackwell* would allow a modification or departure from the traditional *McDonnell Douglas*

analysis if the facts should warrant it[,]" but that Harmon did not advance "any justifiable reason

why the Court should not use these criteria to analyze [his] claim here." We agree.

Simply stated, Harmon failed to demonstrate that Earthgrains's articulated reason for not

replacing him – its plan to restructure its zones and personnel – was intended to conceal its alleged

prior discriminatory conduct and defeat his prima facie case. Mitchel Cox, Sara Lee's regional vice

president, stated in his affidavit that Sara Lee's decision to restructure Earthgrains's zones and move

the Bowling Green depot and two other depots from Earthgrains's West Tennessee Zone to its

Kentucky/Indiana Zone was made *before* Earthgrains terminated Harmon and *before* it became aware

that Harmon intended to file a lawsuit. According to Cox, Earthgrains made a Powerpoint presentation announcing its restructuring decision *four months before* Harmon filed suit. Cox also confirmed that Carter's absorption of Harmon's duties were permanent and that no new district manager positions were created as a result of the vacancy left by Harmon. Carter verified in his affidavit that he did absorb Harmon's duties, that his overall job responsibilities increased as a result, and that "they remain so to this day."

Harmon produced no evidence contradicting the affidavits of Cox and Carter. If Earthgrains's restructuring decisions directly resulted from this lawsuit, the alleged plot has continued now for almost three years. The evidence permits no inference that Earthgrains's actions were a temporary ruse designed to immunize it from liability. Specifically, Harmon submitted no evidence suggesting that, at any time before or after the filing of his lawsuit, Earthgrains hired a new district manager to fill his vacancy or that it reassigned a significantly younger employee to his former position. The only reasonable inference that can be drawn is that Earthgrains permanently eliminated Harmon's position and distributed his former duties among existing staff. Further, that Sara Lee made the decision to restructure Harmon's zone *before* Earthgrains terminated him and even announced that decision *four months before* Harmon filed suit, strongly weigh against a reasonable inference that its personnel decisions were motivated by its purported desire to conceal its alleged discriminatory conduct.

Where an employer redistributes a terminated employee's work among existing employees and does not replace the discharged employee, we must presume that the employer acted for

legitimate business reasons. That is so because the business incentives underlying such a maneuver are readily apparent. *See Sahadi v. Reynolds Chemical*, 636 F.2d 1116, 1118 (6th Cir. 1980) ("[A] prima facie case of age discrimination is not shown by mere termination of a competent employee where it is shown that an employer is making cutbacks due to economic necessity."). Obviously, the employer accrues the economic benefit of having one less employee on the payroll. For these reasons, the district court correctly rejected Harmon's argument that Earthgrains's restructuring decisions were motivated by a desire to conceal its alleged discrimination.

V.

In conclusion, because the district court correctly ruled that Earthgrains did not replace Harmon with a significantly younger person, thereby defeating his prima facie case, and properly rejected Harmon's remaining pretext arguments, we affirm.